JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
ANIL PATEL
MANISH PATEL

(b) County of Residence of First Listed Plaintiff  **SALEM**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Sprague & Sprague
135 S. 19th St., Suite 400
Philadelphia, PA 19103   (Tel. No.: 215-561-7681)

## DEFENDANTS
COLE SCHOTZ, P.C.
RABINOWITZ, LUBETKIN & TULLY, LLC
JOHNATHAN I. RABINOWITZ, ET AL.

County of Residence of First Listed Defendant  **BERGEN**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights ☐ 830 Patent | ☐ 430 Banks and Banking ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts ☐ 893 Environmental Matters |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Violation of Plaintiffs Federal Civil Rights Under 42 U.S.C. § 1983
Brief description of cause:
Acting under color of state law, Defendants deprived Plaintiffs of property without due process.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE 6-30-17
SIGNATURE OF ATTORNEY OF RECORD *(signature)*

**FOR OFFICE USE ONLY**
RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ANIL PATEL,**<br>263 North River Drive<br>Pennsville, NJ 08070,<br><br>-And-<br><br>**MANISH PATEL,**<br>105 Dansfield Lane<br>Chadds Ford, PA 19317,<br><br>*Plaintiffs,*<br><br>v.<br><br>**COLE SCHOTZ, P.C.,**<br>25 Main Street<br>Hackensack, New Jersey 07601,<br><br>-And-<br><br>**RABINOWITZ, LUBETKIN & TULLY, LLC,**<br>293 Eisenhower Parkway, Suite 100<br>Livingston, NJ 07039,<br><br>-And-<br><br>**JONATHAN I. RABINOWITZ,**<br>17 Woodhill Drive<br>Maplewood, NJ 07040,<br><br>-And-<br><br>**NARENDRA LAKHANI,**<br>30 Kristy Lane<br>Watchung, New Jersey 07069,<br><br>-And- | **CAMDEN VICINAGE**<br><br>**Civil Action No.**_____ |

| | |
|---|---|
| **SONALI MODY,**<br>30 Main Street, Apt. 9F<br>Brooklyn, NY 11201,<br><br>-And-<br><br>**DARSHAN LAKHANI,**<br>2728 Thomson Avenue, Apt. 814<br>Long Island City, NY 1101,<br><br>-And-<br><br>**LAKHANI ASSOCIATES, LLC,**<br>30 Kristy Lane<br>Watchung, NJ 07069,<br><br>*Defendants.* | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT – CIVIL ACTION

### INTRODUCTION

Plaintiffs' property has been meaningfully interfered with by Defendants—acting under the color of state law—without the minimum due process guaranteed by the United States Constitution. As explained in greater detail below, Defendants have deprived Plaintiffs of the process they are due by invoking the compulsory powers of the State of New Jersey to attach Plaintiffs' property based on a judgment Defendants know is insufficient to support execution activities and by subsequently seizing Plaintiffs' property without the pre-deprivation and post-deprivation processes the Third Circuit has held due process requires. By enlisting the compulsory powers of New Jersey and seizing Plaintiffs' property without constitutionally-required process and under the color of state law, Defendants violated Plaintiffs' constitutionally protected rights. Defendants are liable under 42 U.S.C. § 1983 for the financial, emotional and related deleterious harms their constitutionally-offensive actions have inflicted upon Plaintiffs.

1

## THE PARTIES

1. Plaintiff Anil Patel is an adult individual who is a citizen and domiciliary of the State of New Jersey. Plaintiff Anil Patel resides at 263 N. River Drive, Pennsville, New Jersey 08070, and maintains a business address at 341A South Black Horse Pike, Bellmawr, New Jersey 08031.

2. Plaintiff Manish Patel is an adult individual who is a citizen and domiciliary of the State of Pennsylvania. Plaintiff Manish Patel resides at 105 Dansfield Lane, Chadds Ford, Pennsylvania 19317, but maintains a business address at 341A South Black Horse Pike, Bellmawr, New Jersey 08031.

3. Defendant Cole Schotz, P.C. ("Cole Schotz") is a New Jersey professional corporation law firm. Upon information and belief, Defendant Cole Schotz's principal place of business is located at 25 Main Street, Hackensack, New Jersey 07601. At all times material hereto, Cole Schotz acted by and through its agents, servants, partners, associates, workers, and/or employees, all of whom acted within the course and scope of their authority and/or employment, and in furtherance of Cole Schotz's business. It is believed and therefore averred that Cole Schotz provided and provides representation in numerous matters within this vicinage.

4. Defendant Rabinowitz, Lubetkin & Tully, LLC ("Rabinowitz Lubetkin" or the "Receiver's Law Firm") is a New Jersey limited liability corporation law firm. Upon information and belief, Defendant Rabinowitz Lubetkin's principal place of business is located at 293 Eisenhower Parkway, Suite 100, Livingston, New Jersey 07039. At all times material hereto, Rabinowitz Lubetkin acted by and through its agents, servants, partners, associates, workers, and/or employees, all of whom acted within the course and scope of their authority and/or employment, and in furtherance of Rabinowitz Lubetkin's business.

5. Defendant Jonathan I. Rabinowitz, Esquire, is an adult individual who, upon information and belief, is a citizen and domiciliary of the State of New Jersey. Upon information and belief, Defendant Jonathan I. Rabinowitz resides at 17 Woodhill Dr., Maplewood, NJ 07040.

6. Defendant Narendra Lakhani is an adult individual who, upon information and belief, is a citizen and domiciliary of the State of New Jersey. Upon information and belief, Defendant Narendra Lakhani maintains a residence at 30 Kristy Lane, Watchung, New Jersey 07069 and a business address at 341 S Black Horse Pike, Bellmawr, NJ 08031.

7. Defendant Sonali Mody is an adult individual who, upon information and belief, is a citizen and domiciliary of the State of New York. Upon information and belief, Defendant Sonali Mody maintains a registered business address at 341 S Black Horse Pike, Bellmawr, NJ 08031.

8. Defendant Darshan Lakhani is an adult individual who, upon information and belief, is a citizen and domiciliary of the State of New York. Upon information and belief, Defendant Darshan Lakhani maintains a registered business address at 341 S Black Horse Pike, Bellmawr, NJ 08031.

9. Defendant Lakhani Associates, LLC is a New Jersey Limited Liability Company, with a principal place of business at 30 Kristy Lane, Watchung, New Jersey 07069.

## JURISDICTION AND VENUE

10. This is an action under 42 U.S.C. § 1983 seeking damages against Defendants for committing acts, under color of state law, with the intent and purpose of depriving Plaintiffs of rights secured under the Constitution and laws of the United States. Because this case arises under the United States Constitution and 42 U.S.C. § 1983, this Court has jurisdiction over the matter pursuant to and under 28 U.S.C. § 1343.

11. This Court is an appropriate venue for this case pursuant to 28 U.S.C. § 1391. The actions complained of took place in this judicial district, evidence and records relevant to the allegations are maintained in this judicial district, and Defendants regularly conduct business within this judicial district.

12. Camden is the proper vicinage for this action since the Lakhani Defendants maintain a business address in the Borough of Bellmawr in Camden County; the property the Defendants deprived Plaintiffs of is located in and derived from Camden County; Plaintiff Anil Patel resides in Camden County; the Lakhani Defendants' and the Patels' joint-business (Brix Hospitality, LLC, discussed below) is located in the Borough of Bellmawr in Camden County; and the parties' dispute arises out of differences over property in Camden County that was jointly owned by the Patel Defendants and the Lakhani Defendants.

## FACTUAL BACKGROUND

### *The Lakhanis' and the Patels' Business Relationship*

13. In 2005, Narendra Lakhani, Sonali Mody and Darshan Lakhani (collectively, together—where applicable—with an entity discussed below, Lakhani Associates, the "Lakhanis"), along with Anil Patel and Manish Patel (collectively, the "Patels"), formed Brix Hospitality, LLC ("Brix Hospitality"), with the Lakhanis collectively holding 51% of the shares of Brix Hospitality and the Patels holding the remaining 49% of the shares of the company.

14. The Lakhanis and the Patels formed Brix Hospitality for the purpose of purchasing a Comfort Inn hotel located in Long Island City, New York (the "Long Island Comfort Inn"), which purchase occurred in 2005.

15. With the Patels managing and running the Long Island Comfort Inn, the value of the hotel drastically increased in a short period of time.

4

16. In fact, a few years after purchasing the Long Island Comfort Inn, Brix Hospitality sold the hotel at a profit of approximately $8,500,000.

17. Following the profitable sale of the Long Island Comfort Inn, and per the Lakhanis' urging, to which the Patels acceded, Brix Hospitality used the proceeds of the sale to complete a "like-kind exchange" pursuant to Internal Revenue Code §1031 by purchasing two additional hotel properties: the Kenilworth Inn in Kenilworth, New Jersey ("Kenilworth Inn"), and the Comfort Suites in Laurel, Maryland ("Laurel Comfort Suites").

18. Brix Hospitality purchased Kenilworth Inn and Laurel Comfort Suites through separate wholly-owned subsidiaries, Brix Kenilworth, LLC and Brix Laurel, LLC, with Narendra Lakhani, Sonali Mody and Darshan Lakhani collectively serving as the majority partners and Narendra Lakhani serving as the managing partner of Brix Hospitality and the respective wholly-owned subsidiaries.

19. Kenilworth Inn was purchased by Brix Kenilworth, LLC on April 9, 2008, and Laurel Comfort Suites was purchased by Brix Laurel, LLC on April 2, 2008.

20. The operating agreements for Brix Kenilworth, LLC ("Brix Kenilworth") and Brix Laurel, LLC ("Brix Laurel") provided that the Patels would manage and operate Kenilworth Inn and Laurel Comfort Suites on a day-to-day basis.

21. Through their long-standing relationship with Sun National Bank ("Sun Bank"), built over the course of two decades with the Patels timely repaying Sun Bank on more than $50,000,000 in loans, the Patels arranged for the financing of Kenilworth Inn on behalf of Brix Kenilworth. Sun Bank is headquartered in Mount Laurel, New Jersey.

22. Because Brix Kenilworth agreed to pledge Kenilworth Inn as collateral for the loan from Sun Bank, Anil Patel and Manish Patel each agreed to personally guarantee any

5

portion of the loan not otherwise satisfied by the sale, transfer or other disposition of Kenilworth Inn in the event of a loan default.

### *The Lakhanis' Scheme to Force Brix Kenilworth to Default on the Loan Personally Guaranteed by the Patels*

23. Brix Kenilworth timely met its loan obligations to Sun Bank for several years before the Lakhanis, in their individual capacities and through a separate company they controlled, embarked on a scheme to cause Brix Kenilworth to default on the loan the Patels personally guaranteed, with the goal of ultimately stripping the Patels of their interest in Kenilworth Inn. In September 2010, the Lakhanis, through their then-counsel, sent the Patels notice that the Lakhanis had unilaterally (and without authority) terminated the management agreement between Brix Kenilworth and Northstar Kenilworth, LLC, a separate corporation controlled by the Patels, thus stripping the Patels of their authority under Brix Kenilworth's operating agreement to participate in management and operational decisions related to Brix Kenilworth and Kenilworth Inn.

24. The Lakhanis then directed Brix Kenilworth not to make any further payments to Sun Bank on the loan for which the Lakhanis knew the Patels were the personal guarantors.

25. Moreover, in order to ensure default of Brix Kenilworth's loan from Sun Bank, on September 15, 2010, Narendra Lakhani sent an email to Plaintiffs Anil and Manish Patel stating as follows:

> Dear Anil and Manish Patel,
> Please be advised that NorthStar or Patels are not to make any further payments to sun bank without first obtaining my approval.
> I have given similar instructions to both of you yesterday via telephone calls. Please confirm that you would adhere to these instructions.
> Sincerely,
>
> N. Lakhani, Managing Member, BH, BK, AND BL LLC.

26. Because of the Patels' proven track record as reliable borrowers and repayors, Sun Bank attempted to work out a deal with Brix Kenilworth to avoid the company's default on its loan with Sun Bank. However, Sun Bank's efforts to work out a deal with Brix Kenilworth ultimately failed when the Lakhanis refused to permit Brix Kenilworth to make payments to Sun Bank for the loan; specifically prohibited the Patels, who had personally guaranteed the Sun Bank loan, from making payments on the loan; and refused to permit Brix Kenilworth to enter into a fair and reasonable forbearance agreement with Sun Bank.

27. Unknown to the Patels in 2010, but as they have since learned, Narendra Lakhani has a history of driving out his business partners and pilfering partnership assets through similar tactics as those described above that Narendra Lakhani used against the Patels.

28. Due to the Lakhanis' obstreperous actions, Sun Bank declared its loan to Brix Kenilworth in default.

29. Upon default, Sun Bank had two related legal avenues available to it, as described below.

30. First, Sun Bank could initiate an action at law against the borrower and guarantors of the note in default, including the Patels.

31. Second, and relatedly, Sun Bank could foreclose on the collateral, Kenilworth Inn, and credit the value of this collateral against the amount of the note in default to avoid "double recovery."

32. Sun Bank elected to pursue both legal avenues available to it—*i.e.*, a collection action against the guarantors on the defaulted note (including the Patels) and a separate foreclosure action on the collateral pledged as security on the defaulted note (*i.e.*, Kenilworth Inn).

33. To collect on its loan in default, Sun Bank initiated a collection action at law in New Jersey State court in Atlantic Count, New Jersey, and obtained a judgment against Brix Kenilworth, as well as against Anil Patel and Manish Patel as guarantors of Sun Bank's loan to Brix Kenilworth, in the amount of $9,747,461.90 (the judgment is sometimes referred to herein as the "Sun Bank Judgment").

34. Due to a consolidation of lawsuits, the Sun Bank Judgment was entered in the Superior Court of New Jersey, Law Division, Somerset County at Docket No. L-1778-10 on September 26, 2011 (the "Collection Action").

35. To foreclose on the collateral pledged as security on the loan in default (*i.e.*, Kenilworth Inn), Sun Bank initiated a separate foreclosure action on the Kenilworth Inn collateral in the Superior Court of New Jersey in Atlantic County, New Jersey, in October 2010 (the "Foreclosure Action").

### *The Lakhanis' Surreptitious Acquisition of the Sun Bank Judgment and the Kenilworth Inn and the Uncertain Sum of the Sun Bank Judgment*

36. Shortly before obtaining a judgment against the Patels, in April 2010, Sun Bank appraised Kenilworth Inn at approximately $11,900,000, over $2,000,000 more than the amount of the Sun Bank Judgment.

37. Sometime prior to December 9, 2011, the Lakhanis formed a company called Lakhani Associates LLC ("Lakhani Associates"), wholly owned by the Lakhanis for the purpose of purchasing Sun Bank's loan for Kenilworth Inn.

38. In December 2011, Lakhani Associates purchased Sun Bank's loan to Brix Kenilworth for Kenilworth Inn without notice to the Patels. As part of the purchase of the loan to Kenilworth Inn, Sun Bank assigned to the Lakhanis the Sun Bank Judgment obtained against Brix Kenilworth and the Patels in the Collection Action.

39. On December 20, 2012, the Lakhanis had Brix Kenilworth, which they controlled, convey to the Lakhanis the Kenilworth Inn collateral then subject to the pending Foreclosure Action. The conveyance was effected by a deed in lieu of foreclosure executed by Narandra Lakhani and witnessed by his daughter, Sonali Mody, and it was completed without the Patel's knowledge and without prior notice of the conveyance to the Patels as required under the Brix Kenilworth operating agreement.

40. The Patels would not learn of the Lakhanis' purchase of the Sun Bank Judgment in the Collection Action and the deed and conveyance of the Kenilworth Inn collateral subject to foreclosure in the Foreclosure Action until after the purchase and transfer were completed.

41. The value of the Kenilworth Inn pledged as collateral on the loan in default that was conveyed to the Lakhanis was required to be credited against the Sun Bank Judgment upon the transfer of the property to the Lakhanis. Prior to December 2012, the Lakhanis were well aware of their obligation to credit the collateral they received against the underlying loan because such an adjustment was earlier made to a judgment against the Patels after the Lakhanis obtained property known as the Laurel Comfort Suites (the hotel jointly owned by the Patels and the Lakhanis in Maryland) following a similar default on the mortgage facilitated by the Lakhanis' deceitful conduct. In that instance, the legally required credit against the judgment based on the value of the collateral property reduced the judgment amount to zero and thus rendered the judgment satisfied.

42. Similarly, under settled law, the conveyance of the Kenilworth Inn collateral to the Lakhanis by deed in lieu of foreclosure satisfied the Sun Bank Judgment because, based on information and belief, the value of Kenilworth Inn—the collateral pledged for the underlying loan from Sun Bank—exceeded the value of the Sun Bank Judgment.

9

43. In any event, the sum of the Sun Bank Judgment is and will remain uncertain until after the credit of the value of the Kenilworth Inn collateral is completed.

44. Moreover, execution on the uncredited Sun Bank Judgment could not proceed until after the Judgment was credited by the fair market value of the Kenilworth Inn collateral to avoid "double recovery," prohibited by law, on the uncredited Judgment.

45. For reasons not pertinent to the material issues in this case, the Patels dispute the propriety of the Lakhanis' purchase of the Sun Bank Judgment and receipt by deed transfer of Kenilworth Inn.

46. Since December 2011, Kenilworth Inn has been a successful and highly-profitable ongoing operation from which the Lakhanis have denied the Patels their rightful share of the profits.

### *Defendants' Scheme to Take the Patels' Property Based on the Uncredited Sun Bank Judgment and Without Due Process*

47. At all times material hereto, the Lakhanis knew the judgment Sun Bank sold to the Lakhanis was satisfied by the deed in lieu of foreclosure that conveyed Kenilworth Inn to the Lakhanis, or, alternatively, that the Sun Bank Judgment needed to be reduced by the value of the Kenilworth Inn collateral before execution could proceed on the Sun Bank Judgment inasmuch as, absent this credit, the Sun Bank Judgment is not final and for a sum certain, prerequisites before execution activities could lawfully proceed. Thus, the Lakhanis have at all material times understood (or should have understood) that upon their receipt of the deed in lieu of foreclosure discussed herein, execution against the Patels on the Sun Bank Judgment could not lawfully proceed until after the value of the Kenilworth Inn collateral was first credited against the Sun Bank Judgment.

10

48. Nevertheless, after securing the Sun Bank Judgment and title to Kenilworth Inn through deed in lieu of foreclosure—the value of which the Patels believe is greater than the value of the Sun Bank Judgment—the Lakhanis misrepresented in the Collection Action and other New Jersey state court actions discussed below that the uncredited amount of the Sun Bank Judgment is final and for a sum certain.

49. Prior to September 2016, the Lakhanis, through their then-counsel, secured numerous writs of execution against the Patels on their false misrepresentation regarding the "amount of the debt."

50. In particular, knowing that the Sun Bank Judgment had been satisfied and/or still subject to a substantial credit based on the value of the Kenilworth Inn collateral (which to date has not yet been determined), the Lakhanis through their counsel, including Cole Schotz, falsely represented that the amount of the Sun Bank Judgment remains in a sum certain amount exceeding $10,000,000. This representation is false because the Lakhanis and Cole Schotz know no credit has yet been applied against the amount of the Sun Bank Judgment based on the value of the Kenilworth Inn collateral now in the Lakhanis' possession.

51. Furthermore, the Lakhanis and their counsel have opposed the Patels' efforts to secure the credit against the amount of the Sun Bank Judgment based on the fair market value of the Kenilworth Inn collateral.

52. Displeased with their inability to improperly collect against the Patels through misuse of the execution process provided under New Jersey Law, in August 2016, the Lakhanis, through their counsel, Cole Schotz, filed a motion in New Jersey state court to appoint a receiver to aid them in their unlawful collection efforts against the Patels on the Lakhanis' uncredited Sun Bank Judgment.

53. Based on the Lakhanis' and Cole Schotz's false representations that the Sun Bank Judgment against the Patels remains outstanding for a sum certain, in November 2016, Presiding Judge Thomas C. Miller of the Superior Court of New Jersey, Somerset County, appointed Jonathan I. Rabinowitz ("Rabinowitz" or the "Receiver") as a receiver over the Patels' property and assets to aide the Lakhanis' in their collection efforts against the Patels based on the uncredited Sun Bank Judgment.

54. The Receiver is paid by the Lakhanis, as is the law firm in which the Receiver is a partner, Rabinowitz, Lubetkin & Tully, LLC ("Rabinowitz Lubetkin" or the "Receiver's Law Firm").

55. As discussed below, the coordinated collection activities of the Lakhanis, Cole Schotz, the Receiver and the Receiver's Law Firm against the Patels have resulted in the deprivation of the minimum due process the Patels are due under the law by, *inter alia*, permitting the Lakhanis' collection efforts to proceed despite the Lakhanis' and the Receiver's (1) inability to endorse "the amount of the debt, damages, and costs actually due and to be raised by the writ, together with interest from the date of the judgment," each time the creditor seeks execution, as stated in Rule 4:59-1; (2) failure to comply with the information required to be conveyed in the contents of the writ of execution—including the precise amount of the outstanding judgment less any credits to which a debtor is entitled—and other process for the enforcement of judgments specified in Rule 4:59-1(b); (3) failure to give sufficient notice to the Patels regarding the allegedly outstanding judgment and execution efforts, as stated in Rule 4:59-1(h); and (4) timely pre- and/or timely post-deprivation hearings to raise and secure the credit to the Sun Bank Judgment the Patels are entitled to based on the value of the Kenilworth Inn collateral.

56. As further discussed below, the coordinated activities of the Lakhanis, Cole Schotz, the Receiver and the Receiver's Law Firm also deprived the Patels of the process the Patels otherwise would be entitled to as specified under New Jersey Rules 4:60-9 (Notice to Defendant) and 4:60-9 (Time to Defend), as well as the opportunity for the Patels to move to vacate a writ of execution against them, as provided for under 4:60-11(Motion to Vacate Writ or Levy).

57. The procedure described above that the Lakhanis, Cole Schotz, the Receiver and the Receiver's Law Firm have used to unlawfully forcibly deprive the Patels of their property provides for no discretionary review or for a prompt post-seizure hearing in violation of minimum due process requirements in such matters.

58. The above-mentioned New Jersey state laws and procedural rules are required to ensure minimum due process under the United States Constitution.

59. In a separate pending state court action involving the claims of mismanagement asserted by the Lakhanis and the Patels against each other (the "New Jersey Action"), the Patels have asserted 20 counterclaims against the Lakhanis alleging the Lakhanis: violated multiple duties and agreements with the Patels, improperly usurped and destroyed the Patels' business opportunities, defamed the Patels, and, among other things, violated the New Jersey and federal RICO laws, causing the Patels significant monetary damages.

60. The Patels have a good faith belief that the aggregate recovery for their counterclaims against the Lakhanis is very valuable, potentially in the range of tens of millions of dollars.

61. Because the Receiver, in concert with the Receiver's Law Firm, the Lakhanis and Cole Schotz, are intentionally utilizing an execution procedure devoid of the minimum process

13

due to the Patels under the United States Constitution, as discussed above, the Patels' prejudgment counterclaims have been deemed assets of the Patels held by the Receiver and subject to an unlawful execution by the Lakhanis even though, *inter alia*: (1) the uncredited Sun Bank Judgment cannot support execution activities; (2) Defendants have intentionally bypassed the notification and hearing requirements to which the Patels were entitled under New Jersey Law in order to satisfy federal due process requirements; and (3) Defendants have failed, as required under the law, to establish that the Sun Bank Judgment is "final and for a sum certain."

62. Nevertheless, on June 1, 2017, the Receiver transferred the Patels' valuable prejudgment counterclaims against the Lakhanis to the Lakhanis in exchange for the Lakhanis agreeing to reduce their alleged $10.5 million judgment against the Patels by a mere $100,000, with full knowledge of the Lakhanis' intentions to immediately dismiss the counterclaims against them. The Patels' counterclaims against the Lakhanis were "sold" to the Lakhanis in this manner notwithstanding the prohibition under New Jersey law against assignment, sale or transfer of tort claims prejudgment and of the types of contract claims the Patels assert against the Lakhanis, and without a timely pre-judgment and/or timely post-judgment hearing as required under the law.

63. Upon information and belief, neither the Receiver nor the Receiver's Law Firm has ever done anything to ascertain the reasonable value of the Patels' far-reaching and weighty counterclaims against Lakhanis.

64. Upon information and belief, the Receiver, the Receiver's Law Firm, and Cole Schotz, in addition to the Lakhanis, are aware that the Lakhanis received title to Kenilworth Inn by deed in lieu of foreclosure after the Lakhanis purchased the Sun Bank Judgment in the Collection Action and that the Sun Bank Judgment must be – but to date has not been – credited by the value of the Kenilworth Inn collateral.

65. Moreover, upon information and belief, the Receiver and the Receiver's Law Firm intentionally have failed to assure themselves that the Sun Bank Judgment is for a sum certain and not satisfied and, as a result, the Receiver and the Receiver's Law Firm have knowingly and intentionally aided and abetted the Lakhanis and Cole Schotz in depriving the Patels of property without the mandatory process. Indeed, upon information and belief, the Receiver and the Receiver's Law Firm know that the Lakhanis' judgment against the Patels is satisfied by the transfer of the title of Kenilworth Inn to the Lakhanis (or at least subject to a credit based on the value of the Kenilworth Inn collateral) and, nevertheless, they have elected to support the Lakhanis' collection efforts against the Patels knowing these efforts are without legal basis.

66. The Patels have suffered grave consequences due to the Defendants' deprivations of the Patels' constitutional rights.

67. The Defendants' constitutional deprivations have unlawfully extinguished the Patels' viable claims for tens of millions of dollars owed to them for the Lakhanis' unlawful conduct.

68. Moreover, the Patels have been denied their absolute right to challenge at a timely held hearing whether the uncredited Sun Bank Judgment against them is satisfied (or subject to a substantial reduction), thereby not only resulting in the Patels being stripped of their property without constitutionally-guaranteed due process, but allowing such deprivation to indefinitely continue in the future, as there is no obstacle to Defendants continuing their unlawful execution process against the Patels.

69. Conversely, the Lakhanis, through the assistance of Cole Schotz, the Receiver, and the Receiver's Law Firm have significantly benefitted themselves through the unlawful

exploitation of a satisfied or less than final, sum-certain judgment, and a constitutionally-infirm execution process.

70. The Lakhanis, with the assistance of the other Defendants, have harassed and continue to harass the Patels through bogus execution measures based on a judgment incapable of supporting execution activities, all knowingly in violation of the law and the Patels' constitutional rights.

71. The Defendants' actions have caused grave financial and emotional harm to the Patels. For example, as a result of the Defendants' improper scheme, sheriffs have invaded the Patels' personal residences, interfering with the Patels' freedom, causing emotional anguish to the Patels' family members, and tarnishing the Patels' reputation among the members of the Patels' communities who witnessed and heard about the sheriffs' invasions of the Patels' properties. Moreover, the Defendants' actions in attempting to seize the Patels' property based on a judgment that cannot support execution activities have made it impossible for the Patels to obtain commercial and consumer credit from lending institutions and forced a hotel owned by the Patels into bankruptcy. The Defendants have also improperly seized the Patels' assets, including cash and a bank account, and deprived the Patels of their ability to provide for their families.

72. In addition, through the unconstitutional exploitation of the uncredited Sun Bank Judgment and violation of the Patels' due process rights addressed here, the Lakhanis have succeeded in insulating themselves from millions of dollars of liability for their wrongdoing to the Patels, as raised in the Patels' counterclaims in the New Jersey Action.

## COUNT I
### (Plaintiffs v. All Defendants)
**Violation of Plaintiffs' Federal Civil Rights as Guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution Pursuant to 42 U.S.C. § 1983**

73. Plaintiffs incorporate by reference all of the allegations in paragraphs 1 through 73 above as if each is fully set forth herein.

74. As a result of Defendants' constitutional violations, Plaintiffs have suffered a meaningful interference of their possession of property, including but not limited to the counterclaims unlawfully taken from the Patels in the Collection Action, as well as the seizure of Plaintiff Manish Patel's bank account.

75. The seizure of Plaintiffs' property in the Collection Action was accomplished and continues to be accomplished pursuant to a constitutionally-infirm execution procedure based on a judgment that Defendants know cannot support execution activities.

76. Because the minimum requirements of due process were bypassed by Defendants, Plaintiffs were denied both pre-seizure or prompt post-seizure notice and hearing otherwise required by the law.

77. Defendants' unlawful execution process violated well-settled jurisprudence in this area, so that Defendants reasonably could and should have understood that their actions violated the Patels' constitutional rights.

78. The Lakhanis, through Cole Schotz, and assisted by the Receiver and the Receiver's Law Firm, enlisted the compulsive powers of the State of New Jersey to seize property by executing on an uncredited and likely satisfied judgment without a constitutionally-required hearing, thereby acting under color of state law and causing the use of the state's power of legal compulsion to unlawfully deprive the Patels of property.

79. At all times material hereto, each Defendant acted under color of state law.

80. As a direct result of Defendants' constitutionally-violative execution activities, the Patels have sustained and continue to sustain the following damages:

   a. Out-of-pocket expenses, including attorney's fees;

   b. Other monetary harm, including lost income and business opportunities, as well as recoveries based on the Patels' counterclaims against the Lakhanis; and

   c. Impairment of and harm to Plaintiffs' reputation, personal humiliation and embarrassment, mental anguish and suffering.

81. As a result of their outrageous conduct in deliberate and reckless disregard for Plaintiffs' constitutional rights, Defendants are liable to plaintiffs for punitive damages, with an award of costs and counsel fees, together with such other relief authorized under 42 U.S.C. § 1983 or as this Court directs.

WHEREFORE, judgment should be entered in favor of Plaintiffs Anil Patel and Manish Patel against Defendants Lakhanis, Cole Schotz, Rabinowitz, and Rabinowitz Lubetkin.

**SPRAGUE & SPRAGUE**

By: _____
JOSEPH R. PODRAZA, JR., ESQUIRE
PETER A. GREINER, ESQUIRE
The Wellington Building - Suite 400
135 South 19th Street
Philadelphia, PA 19103
(215) 561-7681

*Counsel for Plaintiffs Anil Patel and Manish Patel*

Date: June 30, 2017