IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANIL PATEL and MANISH PATEL, | |
| | NEWARK VICINAGE |
| *Plaintiffs,* | |
| | Civil Action No. 2:17-cv-04868-WJM-MF |
| v. | |
| | |
| COLE SCHOTZ, P.C., RABINOWITZ, LUBETKIN & TULLY, LLC, JONATHAN I. RABINOWITZ, NARENDRA LAKHANI, SONALDI MODY, DARSHAN LAKHANI, And LAKHANI ASSOCIATES, LLC, | |
| | |
| *Defendants*. | |

**PLAINTIFFS' RESPONSE TO MOTION FOR SANCTIONS**

**SPRAGUE & SPRAGUE**
JOSEPH R. PODRAZA, JR., ESQUIRE
PETER A. GREINER, ESQUIRE
The Wellington Building - Suite 400
135 South 19th Street
Philadelphia, PA 19103
(215) 561-7681

*Counsel for Plaintiffs Anil Patel and Manish Patel*

1

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

RULE 11 SANCTIONS ARE PROHIBITED AS A MATTER OF LAW ..................................3

SECTION 1927 IS INAPPLICABLE.......................................................................6

THE PATELS' COMPLAINT IS RULE 11 COMPLIANT ........................................8

THE LAKHANIS AND THEIR COUNSEL SHOULD BE SANCTIONED............................13

CONCLUSION.....................................................................................................14

# **TABLE OF AUTHORITIES**

**Cases**

*AeroTech, Inc. v. Estes*,
    110 F.3d 1523 (10th Cir. 1997) ........................................................................... 5

*Baker Industries, Inc. v. Cerberus Ltd.*,
    764 F.2d 204 (3rd Cir. 1985) ................................................................................ 7

*BMR Funding, LLC v. F II, LLC*,
    2013 N.J. Super. Unpub. LEXIS 2064 (2013)................................................... 8, 9

*Citibank, NA v. Errico*,
    597 A.2d 1091 (N.J. Super Ct. App. Div. 1991) .................................................. 8

*DeBauche v. Trani*,
    191 F.3d 499 (4th Cir. 1999) ............................................................................ 6-7

*Eon-Net LP v. Flagstar Bancorp*,
    249 F. App'x 189, 197 (Fed. Cir. 2007) ............................................................. 14

*Galanis v. Szulik*,
    842 F. Supp. 2d 456 (D. Mass. 2011) ................................................................ 12

*Hockley v. Shan Enters. Ltd. Pshp.*,
    19 F.Supp. 2d 235 (D. N.J. 1998) ........................................................................ 5

*In re Yagman*,
    796 F.2d 1165 (9th Cir. 1986) ............................................................................. 7

*Jordan v. Fox, Rothschild, O'Brien & Frankel*,
    20 F.3d 1250 (3rd Cir. 1994) .................................................................. 1, 10, 11

*Mogavero v. Seterus, Inc.*,
    2015 U.S. Dist. LEXIS 155758, (D. N.J. 2015) ............................................... 7, 8

*Morroni v. Gunderson*,
    169 F.R.D. 168 (M.D. Fla. 1996) ......................................................................... 5

*Newstead Bildrs., Inc. v. First Merch. Nat'l Bank*,
    146 N.J. Super. 295, 369 A.2d 951 (App. Div. 1977) ......................................... 9

*Patelco Credit Union v. Sahni*,
    262 F.3d 897, 913 (9th Cir. 2001) ...................................................................... 14

*Photocircuits Corp. v. Marathon Agents*,
    162 F.R.D. 449 (E.D. N.Y. 1995) ........................................................................... 5

*Sneller v. City of Bainbridge Island*,
    606 F.3d 636 (9th Cir. 2010) ................................................................................ 5

*Stauffer v. D.R. Horton, Inc.*,
    2008 U.S. Dist. LEXIS 101052 (E.D. Pa. 2008) ................................................... 4

*Valley Nat'l Bank v. Patyuak Realty, LLC*,
    2016 N.J. Super. Unpub. LEXIS 2297 (N.J. Super. Ct. App. Div. 2016) ............. 8

*Williams v. Giant Eagle Markets, Inc.*,
    883 F.2d 1184 (3rd Cir. 1989) .............................................................................. 6

*Zaldivar v. City of L.A.*,
    780 F.2d 823 (9th Cir. 1986) ................................................................................ 6

## Statutes and Rules

28 U.S.C. § 1927 .............................................................................................. *passim*

42 U.S.C. § 1983 .............................................................................................. *passim*

Fed. R. Civ. P. 41 ....................................................................................................... 5

## Secondary Sources

Moore's Federal Practice 3d § 11.40 ......................................................................... 7

Moore's Federal Practice 3d § 11.22 ....................................................................... 14

# **INTRODUCTION**

The Lakhanis[1] and the Patels[2] are opposing parties in hotly contested litigation in New Jersey state court, the disputed particulars of which are not germane to the resolution of the matter before this Court except those facts that follow.  One of the cases consolidated in that state litigation relates to a judgment against the Patels arising from a default on a loan to an entity jointly owned by the Lakhanis and the Patels.  The Patels personally guaranteed the loan, which was secured by collateral in the form of a hotel the Lakhanis and the Patels owned together.  The default on the loan occurred when the Lakhanis caused the entity they owned with the Patels—but which the Lakhanis controlled—to stop making payments on the loan.

As explained in more detail below, after purchasing a judgment against the Patels from the bank that issued the loan the Lakahnis forced into default, the Lakhanis and others improperly used the judgment to invoke the compulsory powers of New Jersey to seize valuable and substantial property from the Patels through execution activities that fail to comport with minimum constitutional due process requirements.  The Patels therefore filed a lawsuit in this Court to redress these constitutional violations in accordance with the United States Court of Appeals for the Third Circuit's decision in *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250 (3rd Cir. 1994), and a reasonable extension of the legal principles stated therein to the facts of the Patels' dispute with the Lakhanis.

The Lakhanis and other defendants notified the Patels of their intention to seek dismissal of their federal lawsuit and Rule 11 sanctions against the Patels, and the undersigned counsel who represented the Patels at the time, if the Patels did not voluntarily withdraw their

---

[1] "The Lakhanis" refers to Narendra Lakhani, Sonali Mody, Darshan Lakhani, and Lakhani Associates, LLC.
[2] "The Patels" refers to Anil Patel and Manish Patel.

Complaint.[3]  For reasons not related to the merits of their claim, the Patels elected to withdraw the subject lawsuit without prejudice, reserving their right to file an amplified complaint in the event they secure legal representation under feasible financial terms and conditions.  The Patels' withdrawal of their pleading occurred within the 21-day period for Rule 11 "safe harbor" protection.

The Lakhanis and their counsel nevertheless filed a Rule 11 sanctions motion against the Patels and the undersigned counsel.  They did so despite receiving a letter from the Patels citing case law clearly providing that Rule 11 prohibits the filing of a sanctions motion against a party who voluntarily withdraws the subject pleading with Rule 11's 21-day "safe harbor" period, and that filing a sanctions motion against the Patels and their counsel after they did so would actually expose the Lakhanis and their counsel to sanctions liability.  *See* Ex. A (September 20, 2017 letter).  Significantly, the motion the Lakhanis filed fails to cite any authority in support of Rule 11 sanctions against parties like the Patels who have Rule 11 "safe harbor" protection and, indeed, the relevant case law (about which the Patels made the Lakhanis aware before they filed their baseless Rule 11 motion) uniformly supports the Patels' position that the Lakhanis' filing is not only frivolous but precluded as a matter of law. The Lakhanis' alternative requests for sanctions under 28 U.S.C. § 1927 and/or this Court's inherent powers are likewise spurious as explained below.

The Patels and their counsel request at the outset that the Lakhanis' motion for sanctions be denied.  In addition, the Patels and their counsel ask the Court to impose sanctions against the Lakhanis and their counsel for filing a frivolous motion they knew to be prohibited by

---

[3] For reasons unrelated to the Rule 11 motion, the undersigned counsel and their law firm, Sprague & Sprague, withdrew as counsel for the Patels in the state action.  The undersigned counsel only represent the Patels now for the purpose of responding to this frivolous motion.

2

federal law.  Pursuant to Fed.R.C.P. 11(c)(2), the Patels and their counsel respectfully request that the Lakhanis and their counsel be required to compensate the Patels and their counsel for the needless attorney's fees, costs and expenses the Patels and their counsel have had to incur in opposing the Lakhanis' and their counsel's irresponsible and unlawful motion.  The reasons supporting the Patels' requested relief follow.

## **RULE 11 SANCTIONS ARE PROHIBITED AS A MATTER OF LAW**

The Patels filed a lawsuit against the Lakhanis and others on June 30, 2017.  (Doc. 1) The Lakhanis served a draft Rule 11 motion on the Patels' counsel on August 25, 2017.  Within 21 days thereafter (on September 12, 2017), the Patels, through their undersigned counsel, withdrew the Complaint at issue in the Lakhanis' draft Rule 11 motion.  Under Rule 11 and the case law interpreting the Rule, the Patels' voluntary withdrawal of their Complaint definitively concluded and rendered moot the Rule 11 issues raised by the Lakhanis.  Inexplicably, and with full knowledge that doing so would violate Rule 11, the Lakhanis nevertheless filed their Rule 11 motion with this Court.  The Lakhanis' and their counsel's irresponsible conduct not only must be summarily rejected, but the Lakhanis and their counsel should be required to compensate the Patels and their counsel for the attorneys fees and expenses they have incurred in responding to Lakhanis' frivolous Rule 11 filing.

When the Patels voluntarily withdrew their federal Complaint on September 12, 2017, the Patels and their counsel received absolute and eternal "safe harbor" protection under Rule 11 with respect to the withdrawn pleading, thereby immunizing the Patels and their counsel from Rule 11 sanctions related to that pleading.  Specifically, Rule 11 provides that the "motion must be served under Rule 5, ***but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21***

3

*days after service* or within another time the court sets." Fed.R.C.P. 11(c)(2) (emphasis added). The withdrawal may be done without prejudice (as was done here) and a party is precluded from filing a Rule 11 motion if the subject filing is withdrawn within Rule 11's 21-day "safe harbor" period. These principles are clear from the Notes of the Advisory Committee on the 1993 amendments to Rule 11, which provides as follows:

> The motion for sanctions is not . . . to be filed until at least 21 days (or such other period as the court may set) after being served. ***If, during this period, the alleged violation is corrected, as by withdrawing (whether formally or informally) some allegations or contention, the motion should not be filed with the court. These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw the position or to acknowledge candidly that it does not currently have evidence to support a specified allegation.*** Under the former rule, parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11; ***under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions.***

(Fed.R.C.P. 11, Notes of Advisory Committee on 1993 Amendments) (emphasis added). Unquestionably, "[t]he 'safe harbor' provision immunizes litigants from Rule 11 sanction motions if they withdraw or correct the challenged paper before the motion is served." *See* Moore's Federal Practice 3d § 11.22[1][b].[4]

Courts in this Circuit have uniformly held that sanctions may not be imposed based on a filing that is withdrawn within the 21-day "safe harbor" period set forth in Rule 11. For example, in *Hockley v. Shan Enters. Ltd. Pshp.*, 19 F.Supp. 2d 235 (D. N.J. 1998), this Court denied a Rule 11 motion filed after a party voluntarily withdrew its third-party complaint within

---

[4] This is presumably the reason that the other defendants who also served the Patels and their counsel with draft Rule 11 motions did not file those motions with the Court after the Patels voluntarily withdrew their Complaint.

4

the 21-day safe harbor period. In distinguishing the current version of Rule 11, as amended in 1993 to include the "safe harbor" period, from the prior version of Rule 11 and the case law interpreting it, this Court found that "a violation of Rule 11 is *not* complete unless the offending paper is *not* withdrawn within 21 days following notice by the moving party." *Id*. at 240 (emphasis in original). Accordingly, the plain text and intent of the "safe harbor" provision of Rule 11 "preclude bringing a motion for sanctions after the party against which sanctions are sought has voluntarily dismissed its suit." *Id*. Similarly, the Court in *Stauffer v. D.R. Horton, Inc.*, 2008 U.S. Dist. LEXIS 101052 (E.D. Pa. 2008) denied a Rule 11 motion filed after the plaintiff, as here, voluntarily dismissed the action without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A). The *Stauffer* Court recognized that under the present version of Rule 11, "***sanctions are not available once a party has withdrawn the offending pleading either before or within 21 days after receiving a safe harbor notice***." *Id*. at 7-8 (emphasis added). In short, the *Stauffer* Court properly held that the plain text and intent of the "safe harbor" provision of Rule 11 "preclude bringing a motion for sanctions after the party against which sanctions are sought has voluntarily dismissed its suit." *Id*.[5]

---

[5] Other Circuits similarly maintain that no sanctions can issue if Rule 11's "safe harbor" protection applies. *See Photocircuits Corp. v. Marathon Agents*, 162 F.R.D. 449 (E.D. N.Y. 1995)("However, the amendment to Rule 11 was designed to permit transgressors, such as the plaintiff's counsel, an opportunity to avoid sanctions by withdrawing the offending complaint. In this case plaintiff's counsel did afford themselves of this 'second chance' and did voluntarily withdraw the complaint. Significantly, they withdrew the complaint prior to the filing of any motion for sanctions"); *Morroni v. Gunderson*, 169 F.R.D. 168 (M.D. Fla. 1996)("Thus, the 1993 amendments to Rule 11 had the effect of overruling *Cooter and Gell v. Hartmarx* to the extent that under the 1993 version of Rule 11, a party who seeks Rule 11 sanctions based upon allegations in a complaint, cannot wait until the action has been voluntarily dismissed by the opposing party because the party who voluntarily dismisses a case has withdrawn the offending pleading by dismissing the case.")(citing *Photocircuits Corp.*, *supra*); *Sneller v. City of Bainbridge Island*, 606 F.3d 636, 639 (9th Cir. 2010)(finding that Rule 11 does not require withdrawal of claims with prejudice and holding that plaintiffs' withdrawal of the challenged claims without prejudice within the "safe harbor" period vitiated any right to Rule 11 sanctions);

The Lakhanis contend, without any support, that the Patels were obligated to dismiss their pleading with prejudice. This contention is wrong. Rule 11 does not condition "safe harbor" protection only on dismissals with prejudice. In fact, the Lakhanis do not, and cannot, cite any authority requiring a party to dismiss the subject filing with prejudice to avoid Rule 11 sanctions. Under Rule 11, the Patels may choose to resurrect their federal lawsuit with the same or additional averments and claims.[6] For example, the Patels have become aware of facts suggesting that the defendants, acting under color of state law, seized the Patels' mail under false pretenses and through misrepresentations to the United States Postal Service. If the Patels choose to exercise their rights to restore their lawsuit, the defendants' actions with respect to the Patels' mail may further bolster the Patels' claims. Rule 11 cannot serve as a basis for depriving the Patels of their right to file a lawsuit against the defendants based on these and similar actions which infringed upon the Patels' constitutional rights. As importantly, it would have been professionally irresponsible for the Patels' attorneys to counsel them to withdraw their complaint with prejudice. The statute of limitations on the Patels' §1983 claim has not passed and the Patels' present inability to prosecute their constitutional claims does not foreclose them from securing the services of other counsel to refile and pursue similar claims on the Patels' behalf.

## SECTION 1927 IS INAPPLICABLE

The Lakhanis also baselessly seek sanctions pursuant to 28 U.S.C. § 1927. Section 1927, titled "Counsel's liability for excessive costs," provides as follows:

---

*AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528-1529 (10th Cir. 1997)(Rule 11 sanctions are not available if sanctions are sought after a party moves to voluntarily dismiss the claims at issue).
[6] Of course, if the Patels do so, they will not be permitted to again withdraw their Complaint without prejudice or receive safe-harbor protection from a Rule 11 sanctions motion, as Federal Rule 41(a)(1)(B) provides that "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits."

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.[7]

Under no circumstances can §1927 result in sanctions based on the filing of a complaint because an initial pleading does not "multiply the proceedings." *See* Moore's Federal Practice 3d § 11.40 (collecting cases from various circuits to support the proposition that "Section 1927 may not be used to sanction the filing of a frivolous complaint [which the Patels' was not], as initial pleadings do not 'multiply the proceedings'")  Section 1927 "explicitly covers only the multiplication of proceedings that prolong the litigation of a case and likely not the initial pleading, as the proceedings in a case cannot be multiplied until there *is* a case." *Mogavero v. Seterus, Inc.*, 2015 U.S. Dist. LEXIS 155758, *5 (D. N.J. 2015)(quoting *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3rd Cir. 2008)); *see also Zaldivar v. City of L.A.*, 780 F.2d 823, 831 (9th Cir. 1986)(holding that initial pleadings are beyond the reach of §1927); *DeBauche v. Trani*, 191 F.3d 499, 511-12 (4th Cir. 1999)("we conclude as a matter of law that the filing of a single complaint cannot be held to have multiplied the proceedings unreasonably and vexatiously and therefore that § 1927 cannot be employed to impose sanctions"); *In re Yagman*, 796 F.2d 1165, 1187 (9th Cir. 1986)("It is only possible to multiply or prolong proceedings after the complaint is filed").

In this case, the Patels filed only a single Complaint, which has been voluntarily withdrawn. As a matter of law, the filing of this Complaint cannot result in the "multiplication

---

[7] The clear and unequivocal terms of the statute make clear that the Patels, as parties, are not subject to sanctions under §1927. *Williams v. Giant Eagle Markets, Inc.*, 883 F.2d 1184, 1190-91 (3rd Cir. 1989).

7

of proceedings" necessary for §1927 sanctions. Moreover, the Lakhanis cannot recover §1927 sanctions on the erroneous theory that the Patels' withdrawn action asserting separate and distinct civil rights claims somehow multiplies the proceedings in the state courts of New Jersey and Maryland. *See Mogavero v. Seterus, Inc.*, 2015 U.S. Dist. LEXIS 155758, *8 (D.N.J. 2015) ("multiplication of proceedings" cannot result from conduct occurring in separate and distinct legal actions).[8] Thus, the Lakhanis' further attempt to seek sanctions against the Patels and their counsel under §1927 should be seen as the frivolous intimidation tactic that it is, and the Court should summarily deny such sanctions against the Patels and their counsel.

### THE PATELS' COMPLAINT IS RULE 11 COMPLIANT

Even if the Court reached the substance of the Lakhanis' frivolous and baseless sanctions motion, the motion would fail.[9] The Patels' federal pleading amply meets Rule 11 pleading requirements since the Complaint was not presented for improper purposes, includes claims warranted under existing law or a reasonable extension thereof, and is factually supported.[10]

The Patels' pleading addresses the mandatory process they were due but deprived of by the collective and intentional actions taken pursuant to the compulsory powers of New Jersey by

---

[8] Additionally, sanctions may not be ordered under §1927 unless the court finds willful bad faith on the part of the offending attorney, and counsel's conduct in bringing this action was not unreasonable or vexatious. *See Williams*, at 1191 (citing *Baker Industries, Inc. v. Cerberus Ltd.*, 764 F.2d 204, 208-09 (3rd Cir. 1985)). As detailed below, the Patels' Complaint was not filed in bad faith but rather, there was a reasonable factual basis for pursuing their claim based on a valid legal theory.

[9] Although the Lakhanis' motion should fail as a matter of law because the Complaint was withdrawn within the safe harbor period, in order to not waive any arguments or to concede any of the false, spurious claims contained in the Lakhanis' motion, the Patels will briefly address the merits of their motion.

[10] For the Court's benefit, the Patels took the added precaution before filing the Complaint to have another reputable New Jersey-based law firm review its averments and comment on the legal sufficiency of the §1983 claim. The New Jersey law firm concluded the averments in the Patels' pleading stated a viable §1983 claim.

the Lakhanis, a court-appointed Receiver, the Receiver's counsel, and the Lakhani's counsel. As averred in greater detail in the Patels' Complaint, the Lakhanis manipulated a nearly $10 million judgment against the Patels (hereafter "the Judgment") after wrongfully causing an entity jointly owned by the Lakhanis and the Patels to default on a loan the Patels personally guaranteed (which loan was secured by collateral in the form of a hotel the Lakhanis and the Patels owned together). (Doc. 1, Compl. at ¶¶21-46).[11] An operating agreement between the Patels and the Lakhanis mandates that the Lakhanis nevertheless are responsible for 51% of the Judgment. *Id.*. at ¶20 (Operating Agreement for Brix Hospitality, LLC at 23 (Members agree to be responsible for amount in default under guarantees in same percentage of their respective ownership)).

New Jersey typically affords judgment debtors like the Patels constitutionally guaranteed due process by providing that the judgment resulting from a defaulted and secured loan first be reduced to a deficiency judgment before execution efforts may proceed.[12] *See Valley Nat'l Bank v. Patyuak Realty, LLC*, 2016 N.J. Super. Unpub. LEXIS 2297, at *7 (2016)(to prevent windfall, court holds hearing to deduct from debt the fair market value of collateral/property); *BMR Funding, LLC v. F II, LLC,* 2013 N.J. Super. Unpub. LEXIS 2064, *50 (2013) ("Our case law and general equitable principles recognize the entitlement of a mortgagor to a determination of what fair market value credit should be applied prior to allowing mortgagee to further recover on the debt, or at least to a determination money remains due and owing. Thus, logically, a foreclosure action should not need to proceed to the sheriff's sale if the debt has been satisfied.

---

[11] That the Lakhanis caused the default of the loan is memorialized in a September 15, 2010 email from Narendra Lakhani to the Patels stating "[p]lease be advised that NorthStar [the jointly owned entity] or Patels are not to make any further payments to sun bank without first obtaining my approval." (Doc. 1, Compl. at ¶ 25.)

[12] In the traditional setting, when a lender forecloses on a mortgage, the total debt owed by the borrowers to the lender frequently exceeds the foreclosure sale price. The difference between the sale price and the total debt is called a deficiency. Execution is only allowed on the deficiency.

9

Although unusual, and the court need not decide this today, plaintiff will not be permitted to obtain a judgment for foreclosure unless it is shown there is money due and owing."); *Citibank, NA v. Errico*, 597 A.2d 1091, 1097 (1991) (a deficiency hearing is required to preclude a windfall under general equitable principles). The amount of the subject deficiency judgment would equal the difference between the amount of the Judgment owed by the Patels under the defaulted guarantees (in this case no more than $4,900,000—$10 million less the Lakhanis' 51% portion) less the fair market value of the collateral. In the event the fair market value of the collateral equals or exceeds the amount owed by the Patels on the defaulted guarantees, then no deficiency judgment would exist and execution against the Patels' assets would be prohibited.[13] *BMR Funding, LLC*, 2013 N.J. Super. Unpub. LEXIS 2064, at *50. But the Lakhanis (and others) invoked the powers of the State of New Jersey and by-passed the required process to afford constitutional due process to judgment debtors.

Despite repeated requests, the Patels have been denied a fair market value hearing to ascertain if a deficiency judgment exists before the defendants proceeded with execution on the Patels' assets. (*See, e.g.*, Doc. 1, Compl. at ¶51.) Instead, the defendants have intentionally abused the process due the Patels by proceeding with execution against the Patels on the *full amount* of the Judgment that is not final since no fair market value hearing has been held and the Lakhanis' responsibility of 51% has not been credited. *See Newstead Bildrs., Inc. v. First Merch. Nat'l Bank*, 369 A.2d 951, 952 (N.J. App. Div. 1977) (execution requires judgment that is final and for a sum certain); *see also BMR Funding, LLC*, 2013 N.J. Super. Unpub. LEXIS 2064, at *50 (fair market value credit should be applied prior to allowing mortgagee to further

---

[13] Patels' pleading contends that the value of the collateral/property (the Kenilworth Inn) exceeds the amount of the Judgment so that no deficiency exists to support execution on the Patels' assets. (Doc. 1, Compl. at ¶¶36, 42.)

10

recover on the debt). Inasmuch as the Judgment is not—and and cannot—be final for execution purposes unless and until it is reduced to a deficiency judgment, no execution on the Judgment can proceed consistent with constitutionally-required due process.

The Lakhanis (with the Receiver and his counsel) have availed themselves of and imposed on the Patels a state sanctioned and constitutionally-defective process that does not allow for the holding of the state-mandated fair market value hearing, or reduction based on the Lakhanis' 51% credit. (Doc. 1, Compl. at ¶¶55, 56.) The Patels have been deprived of their due process rights by the Lakhanis' actions in this regard while acting under the color of state law, as well as the actions of the other defendants named in the Patels' withdrawn Complaint.

The facts and circumstances set forth in the Patels' Complaint give rise to an action against the Lakhanis and the other defendants under 42 U.S.C. §1983. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250 (3rd Cir. 1994). In *Jordan*, the Third Circuit passed on proceedings for execution and the weakness of Pennsylvania's procedures for post-judgment relief. *Id*. at 1266-1271. The *Jordan* court noted that, much like here, execution involved the invocation of state action by private persons acting under state law. *Id*. at 1266. Thus, private persons and their attorneys, like the Lakhanis and the other defendants, could be liable to a debtor, like the Patels, as state actors under §1983. *Id*.

As significantly, the Third Circuit in *Jordan* concluded that "a private individual who enlists the compulsive powers of the state to seize property by executing on a judgment without pre-deprivation notice or hearing acts under color of law and so may be held liable under section 1983 if his acts cause a state official to use the state's power of legal compulsion to deprive another of property." 20 F.3d at 1267. Because the process at issue in *Jordan* permitted execution without "providing any means of securing a pre-deprivation hearing or obtaining

prompt post-seizure relief," the Third Circuit held that "the district court correctly concluded the acts of the Bermans [judgment creditors] and their Attorneys, absent pre-judgment waiver, deprived [the judgment debtor] of due process once they culminated in the sheriff's seizure of Jordan Mitchell, Inc.'s bank account." *Id*. at 1271.

As alleged here, the Lakhanis and the other defendants, acting under the color of state law, seized valuable and substantial property from the Patels. (Doc. 1, Compl. at ¶¶66-68.) Defendants' seizures were accomplished through an execution process designed by the defendants that became "the state's power of legal compulsion" once their process was approved by the state per the defendants' request. (*Jordan*, 20 F.3d at 1267.)  Here, the defendants' state-approved alternative process of execution was constitutionally infirm because, *inter alia*, the procedure circumvented the mandatory deficiency procedures required before execution could proceed under the normal New Jersey execution process that is in place to ensure the judgment debtors receive due process.  Additionally, the Patels' pleading identifies other minimum due process requirements which were denied the Patels because the defendants unlawfully bypassed them through their state-approved alternative execution process. (*See* Doc. 1, Compl. at ¶¶55, 56.)  And the defendants' constitutionally-offensive actions are not immune from liability merely because some of their actions were state-court approved.  To the contrary, no such immunity exists when, as alleged in the Patels' pleading, the defendants acted with subjective appreciation that their acts deprived the Patels of their constitutional right to due process. *Jordan*, 20 F.3d at 1276; *see also* Doc. 1, Compl. at ¶¶47-50, 53, 55-56, 61, 64, 65.

*Jordan*, or a reasonable extension of the principles announced therein, provides ample precedent for the Patels' §1983 claim against the defendants. This matter was carefully

considered and discussed with learned New Jersey counsel who concurred that there was a valid claim to be stated applying the law set forth in *Jordan*.

## THE LAKHANIS AND THEIR COUNSEL SHOULD BE SANCTIONED

As a result of their filing of the instant, frivolous Rule 11 motion, the Lakhanis and their counsel should be compelled to compensate the Patels and their counsel for the attorneys fees, costs and expenses incurred in defending against the Lakhanis' baseless motion. Before the Lakhanis and their counsel filed the subject bogus Rule 11 sanctions motion, both possessed the Patels' September 20, 2017 correspondence that placed the Lakhanis and their counsel on notice that Rule 11 sanctions cannot issue here given the Patels' and their counsel's entitlement to Rule 11's "safe harbor" protections. (Ex. A.)  The Lakahanis and their counsel totally ignored this forewarning.  In an obvious effort to impose greater costs and expenses on the Patels, and in complete disregard of this Court's resources, the Lakhanis and their counsel nevertheless chose to file the subject bogus Rule 11 sanctions motion.  They so elected to proceed without any precedent in support of their reckless decision (as no such precedent exists).  In fact, the Lakhanis' sanctions motion actually cites to case law determining that Rule 11 sanctions are *not* available once the plaintiff voluntarily dismisses the subject complaint within the "safe harbor" period. *See* Lakhani Motion at pp. 23-24 citing *Galanis v. Szulik*, 841 F. Supp. 2d 456, 461 (D. Mass. 2011).[14]

The Lakhanis and their counsel's irresponsible act of filing this bogus Rule 11 sanctions motion should not be countenanced.  Their conduct runs afoul of the express language of Rule 11 and has needlessly increased costs and expenses for the Patels and their counsel in direct

---

[14] The Lakhanis also completely ignored the holding in *Galaniz* that "filing the complaint only to dismiss it a few months later does not warrant sanctions under § 1927 because commencing an action, however frivolous, is not enough to bring an attorney within the ambit of § 1927." *Id.*

13

violation of Rule 11.  The Lakhanis and their counsel should therefore be required to compensate the Patels and their counsel for the attorney's fees, costs and expenses they have incurred in responding to this bogus sanctions motion.  *See* Fed.R.C.P. 11(c)(2).[15]

## CONCLUSION

The Lakhanis and their counsel's motion for sanctions under Fed.R.C.P. 11, 28 U.S.C. § 1927, and/or this Court's inherent powers should be denied.  Moreover, pursuant to Fed.R.C.P. 11(c)(2), the Lakhanis and their counsel, should be required to compensate the Patels and their counsel for the needless attorney's fees, costs and expenses the Patels and their counsel have had to incur in opposing the Lakhanis' and their counsel's irresponsible motion.  In this regard, the Patels and their counsel should be directed to supply this Court with an affidavit that specifies these attorney's fees, costs and expenses within twenty (20) days from the date of the Court's Order.

                               Respectfully Submitted,

                            **SPRAGUE & SPRAGUE**

                           By:/s/Joseph R. Podraza, Jr._____
                              JOSEPH R. PODRAZA, JR., ESQUIRE
                              PETER A. GREINER, ESQUIRE
                              The Wellington Building - Suite 400
                              135 South 19th Street
                              Philadelphia, PA 19103
                              (215) 561-7681

---

[15] A party defending a Rule 11 motion need not comply with Rule 11's safe harbor provisions prior to requesting costs and attorney's fees based on the frivolousness of the original sanctions motion.  *See Eon-Net LP v. Flagstar Bancorp*, 249 F. App'x 189, 197 (Fed. Cir. 2007) (*see also Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001); Moore's Federal 3d § 11.22 ("when defendant files improper Rule 11 motion, plaintiff may request sanctions [in the form of costs and attorney's fees] for that conduct without cross-motion or observing safe harbor and separate motion requirements.")).

*Counsel for Plaintiffs Anil Patel and Manish Patel*

Dated:  October 12, 2017

15