## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ANIL PATEL and MANISH PATEL, | : | |
| | : | Hon. William J. Martini, |
| Plaintiffs, | : | U.S.D.J. |
| | : | |
| v. | : | |
| | : | Civil Action No. |
| COLE SCHOTZ, P.C., RABINOWITZ, | : | 2:17-cv-04868-WJM-MF |
| LUBETKIN & TULLY, LLC, | : | |
| JONATHAN I. RABINOWITZ, | : | |
| NARENDRA LAKHANI, SONALDI | : | |
| MODY, DARSHAN LAKHANI, | : | *Return Date: November 20, 2017* |
| and LAKHANI ASSOCIATES, LLC, | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO RABINOWITZ
## DEFENDANTS' MOTION FOR SANCTIONS

**SPRAGUE & SPRAGUE**
JOSEPH R. PODRAZA, JR., ESQUIRE
PETER A. GREINER, ESQUIRE
The Wellington Building - Suite 400
135 South 19th Street
Philadelphia, PA 19103
(215) 561-7681

*Counsel for Plaintiffs Anil Patel
and Manish Patel*

## <u>TABLE OF CONTENTS</u>

<u>**PAGE**</u>

TABLE OF AUTHORITIES ................................................................ ii

PRELIMINARY STATEMENT ............................................................1

ARGUMENT ......................................................................................4

I.  SANCTIONS ARE NOT PERMITTED SINCE THE PATELS
    ACTED PROPERLY .......................................................................4

    A.  The Patels' Withdrawn Complaint Asserted a
        Valid Claim ..........................................................................6

    B.  The Rabinowitz Defendants Have No Absolute Immunity ...............14

    C.  The *Barton* Doctrine Is Inapplicable...................................18

II. WITHDRAWAL OF THE PLEADING WITHOUT PREJUDICE
    WAS PROPER AND CANNOT SUPPORT SANCTIONS........................22

CONCLUSION ...................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                             **Page(s)**

*Alpert v. Gerstner*,
   232 S.W.3d 117 (Tex. App. 2006) .................................................................. 15

*Antoine v. Byers & Anderson, Inc.*,
   508 U.S. 429 (1993) ................................................................................. 14, 15

*Barton v. Barbour*,
   104 U.S. 126 (1881) .............................................................................. 18, 19, 21

*BMR Funding, LLC v. F II, LLC*,
   2013 N.J. Super. Unpub. LEXIS 2064 (N.J. Super. Aug. 16, 2013) ...... 9, 10, 11

*Burns v. Reed*,
   500 U.S. 478 (1991) ...................................................................................... 14

*Butz v. Economou*,
   438 U.S. 478 (1978) ...................................................................................... 16

*Candee v. Egan*,
   267 N.W.2d 890 (Wis. 1978) ......................................................................... 17

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) ................................................................................. 4, 5, 23

*Citibank, N.A. v. Errico*,
   597 A.2d 1091 (N.J. Super. App. Div. 1991) .................................................... 9

*Cleavinger v. Saxner*,
   474 U.S. 193 (1985) ...................................................................................... 15

*Ex parte Va.*,
   100 U.S. 339 (1880) ................................................................................. 16, 17

*Felder v. Casey*,
   487 U.S. 131 (1988) ........................................................................................ 6

*Fellheimer, Eichen & Braverman v. Charter Techs.*,
   57 F.3d 1215 (3d Cir. 1995) ............................................................................. 5

*First Nat'l State Bank v. Kron*,
   464 A.2d 1146 (N.J. Super. App. Div. 1983) .................................................. 16

*Forrester v. White*,
 484 U.S. 219 (1988) ............................................................................ 14, 15, 16

*Fuller v. Taylor*,
 6 N.J. Eq. 301 (1847) ........................................................................ 17

*Gillette Foods, Inc. v. Bayernwald-Fruchteverwertung, GmbH*,
 977 F.2d 809 (3d Cir. 1992) .............................................................. 4

*In re DGI Servs., LLC*,
 2017 Bankr. LEXIS 1789 (Bankr. D.N.J. June 26, 2017) ................................ 20

*In re Oak Park Calabasas Condo. Ass'n*,
 302 B.R. 665 (Bankr. C.D. Cal. 2003) ............................................. 17

*In re VistaCare Grp., LLC*,
 678 F.3d 218 (3d Cir. 2012) .............................................................. 19

*Jordan v. Fox, Rothschild, O'Brien & Frankel*,
 20 F.3d 1250 (3d Cir. 1994) ........................................................*passim*

*Klein v. Stahl GMBH & Co.*,
 185 F.3d 98 (3d Cir. 1999) ................................................................. 5

*Landon v. Hunt*,
 938 F.2d 450 (3d Cir. 1991) .............................................................. 4

*Lin v. Neuner* (*In re Lin*),
 2015 U.S. Dist. LEXIS 52457 (D.N.J. Apr. 15, 2015) ..................................... 19

*Link v. Wabash R. Co.*,
 370 U.S. 626, 630-31 (1962) ........................................................... 23

*Lowenbraun v. Canary* (*In re Lowenbraun*),
 453 F.3d 314 (6th Cir. 2006) ............................................................ 19

*Luparelli v. U.S. Fire Ins. Co.*,
 188 A. 451 (N.J. 1936) ................................................................... 10

*Martinez v. Cal.*,
 444 U.S. 277 (1980) ........................................................................ 6

*Morsemere Fed. Sav. & Loan Ass'n v. Nicolaou*,
 503 A.2d 392 (N.J. Super. App. Div. 1986) .................................... 10

*Newstead Builders, Inc. v. First Merchs. Nat'l Bank*,
   369 A.2d 951 (N.J. Super. App. Div. 1977) ..................................................... 11

*Saldana v. Kmart Corp.*,
   260 F.3d 228 (3d Cir. 2001) ............................................................................... 5

*Stauffer v. D.R. Horton, Inc.*,
   2008 U.S. Dist. LEXIS 101052 (E.D. Pa. Dec. 10, 2008) ............................... 24

*Stump v. Sparkman*,
   435 U.S. 349 (1978) .................................................................................. 15, 16

*Teton Millwork Sales v. Schlossberg*,
   311 F. App'x 145 (10th Cir. 2009) .................................................................. 21

*United Jersey Bank/Central v. Pinhas*,
   1995 N.J. Super. LEXIS 268 (N.J. Super. App. Div. Jan. 25, 1995) ............... 10

*Valley Nat'l Bank v. Patyrak Realty, L.L.C.*,
   2016 N.J. Super. Unpub. LEXIS 2297 (N.J. Super. App. Div. Oct. 20, 2016) .. 9

## Statutes

42 U.S.C. § 1983 ............................................................................. *passim*

## Rules

Fed. R. Civ. P. 11 ............................................................................... 1, 3

Fed. R. Civ. P. 41(a)(1) ......................................................................... 24

## PRELIMINARY STATEMENT

The former defendants in this dismissed case, Jonathan I. Rabinowitz, Esquire, ("Rabinowitz") and Rabinowitz, Lubetkin & Tully, LLC, (collectively, the "Rabinowitz defendants"), baselessly move for sanctions against the former plaintiffs, Anil and Manish Patel (the "Patels") and their counsel for filing and voluntarily withdrawing their Complaint within the 21-day safe harbor period under Federal Rule of Civil Procedure 11.  Conceding that the safe harbor protections of Rule 11 preclude the relief they seek, the Rabinowitz defendants attempt to circumvent and undermine these safe harbor protections by *seeking sanctions under this Court's inherent powers*.  Neither the facts nor the law support their effort to impose sanctions on the Patels and/or their attorneys.

The Rabinowitz defendants are involved in a longstanding business dispute between the Lakhanis[1] and the Patels, who are currently opposing parties in hotly-contested litigation in New Jersey state court, the disputed particulars of which are not germane to the resolution of the issue presently before this Court except for those facts that follow.  One of the cases consolidated in that state litigation relates to a judgment against the Patels arising from a default on a loan to an entity jointly owned by the Lakhanis and the Patels.  The Patels personally guaranteed the loan,

---

[1] "The Lakhanis" refers to Narendra Lakhani, Sonali Mody, Darshan Lakhani, and Lakhani Associates, LLC.  They filed a separate sanction motion against the Patels and their counsel that is without merit for the reasons included in the Patels' response in opposition filed on October 12, 2017.

which was secured by collateral in the form of a hotel the Lakhanis and the Patels owned together.  The default on the loan occurred when the Lakhanis ordered the entity they owned with the Patels—but which the Lakhanis controlled—to stop making payments on the loan.

As explained in more detail below, after causing the default on the loan personally guaranteed by the Patels, acquiring from the bank that issued the loan the resulting judgment, and then conveying to themselves the collateral that secured the loan, the Lakhanis then successfully moved the state court (***over the Patels' vigorous objection***) for the appointment of Rabinowitz to serve as a receiver in aid of execution of the judgment against the Patels that the Lakhanis obtained through these maneuvers.[2]  Unlike more traditional receivers, and owing no fiduciary duties to the Patels, Rabinowitz was appointed solely to promote and serve the interests of the Lakhanis in their executions against the Patels to collect on the judgment.  The Lakhanis and the Rabinowitz defendants, in combination with others, improperly used the judgment to invoke the compulsory powers of New Jersey to seize valuable and substantial property from the Patels through execution activities that fail to comport with minimum constitutional due process requirements.  The Patels therefore filed a lawsuit in this Court to redress these

---

[2] Rabinowitz successfully petitioned the Superior Court to allow his law firm, Rabinowitz, Lubetkin & Tully, LLC, to represent him in his capacity as receiver in aid of execution, and to have the Lakhanis pay Rabinowitz's and his firm's legal fees.

2

constitutional violations in accordance with the United States Court of Appeals for the Third Circuit's decision in *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250 (3d Cir. 1994), and a reasonable extension of the legal principles stated therein to the facts of the Patels' dispute with the Lakhanis.

The Rabinowitz defendants and other former defendants notified the Patels of their intention to seek dismissal of their federal lawsuit and Rule 11 sanctions against the Patels and the undersigned counsel (who represented the Patels at the time) if the Patels did not voluntarily withdraw their Complaint.[3]  For reasons unrelated to the merits of their claim, the Patels elected to withdraw the subject lawsuit without prejudice, reserving their right to file an amplified complaint in the future in the event they secure legal representation under feasible financial terms and conditions.  The Patels' withdrawal of their pleading occurred within the 21-day period for Rule 11 "safe harbor" protection, and no new complaint has been filed.

The Rabinowitz defendants and their counsel nevertheless filed the instant sanctions motion against the Patels and the undersigned counsel, which contains misrepresentations and is premised on faulty legal contentions.  First, their motion

---

[3] For reasons unrelated to the Rule 11 motion, the undersigned counsel and their law firm, Sprague & Sprague, withdrew as counsel for the Patels in the state action.  The undersigned counsel now represent the Patels only for the purpose of responding to the frivolous sanctions motions filed in this Court by the Rabinowitz defendants and the Lakhanis.

wrongly contends that liability under §1983 cannot be imposed against the Rabinowitz defendants for combining with others under color of state law to deprive the Patels of their constitutional rights because (a) they claim they are entitled to judicial immunity, and (b) they contend that the Patels' § 1983 liability claim against them is barred under the *Barton* doctrine.  Second, the Rabinowitz defendants' motion wrongly contends that sanctions are warranted because the Patels refused to withdraw their federal Complaint with prejudice (even though the Patels were under no obligation to do so), thereby reserving the Patels' right to refile an amplified complaint in the future, particularly since the statute of limitations on their § 1983 claim has not yet run.

Each of these contentions in the Rabinowitz defendants' sanctions motion is spurious as explained below.  Their motion should be denied.

## ARGUMENT

### I.   SANCTIONS ARE NOT PERMITTED SINCE THE PATELS ACTED PROPERLY

It is well-established that sanctions under a court's inherent powers may not be imposed absent a finding of bad faith conduct.  *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991); *Landon v. Hunt*, 938 F.2d 450, 454 (3d Cir. 1991); *Gillette Foods, Inc. v. Bayernwald-Fruchteverwertung, GmbH*, 977 F.2d 809, 813-814 (3d Cir. 1992).  In *Chambers*, the United States Supreme Court articulated the boundaries of the court's inherent power to sanction:

4

> [A] court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly or for oppressive reasons.  In this regard, if a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party, as it may when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.   The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy.

*Chambers*, 501 U.S. at 45-46 (internal citations and quotations omitted).

"[F]ederal courts must be careful to exercise their inherent powers 'with restraint and discretion.'"  *Fellheimer, Eichen & Braverman v. Charter Technologies*, 57 F.3d 1215, 1224 (3d Cir. 1995) (quoting *Chambers*, 501 U.S. at 44); s*ee also Chambers*, 501 U.S. at 50 ("A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process . . . in determining that the requisite bad faith exists . . . ." (internal citation omitted)); *Klein v. Stahl GMBH & Co.*, 185 F.3d 98, 109 (3d Cir. 1999) ("A trial court should avail itself of its inherent sanctioning power only when absolutely necessary."). And a court's inherent power to sanction should be reserved only for conduct that is "egregious."  *Saldana v. Kmart Corp.*, 260 F.3d 228, 238 (3d Cir. 2001).

As detailed below, the Patels' and their counsel's conduct was proper.  The Patels' constitutional claim against the Rabinowitz defendants was both factually and legally valid.[4]  Moreover, the Patels acted fully within their rights to withdraw the pleading without prejudice, thereby preserving their right to refile an amplified complaint should they secure counsel under viable financial conditions within the applicable statute of limitations period.  Sanctions are clearly not warranted, and the Rabinowitz defendants' motion is frivolous and contrived to further harass and inconvenience the Patels and their counsel.

### A.    The Patels' Withdrawn Complaint Asserted a Valid Claim

The Patels' federal pleading was valid since the Complaint was not presented for improper purposes, the claim therein was warranted under existing

---

[4] Throughout their papers, the Rabinowitz defendants seem to suggest that they are not subject to suit for conduct wrongful under § 1983 because language in state court orders sought to limit Rabinowitz's liability as receiver in aid of execution. The Rabinowitz defendants are incorrect given the Supremacy Clause in the United States Constitution.  *See Martinez v. Cal.*, 444 U.S. 277, 284 n.8 (1980) ("Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 . . . cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced."); *Felder v. Casey*, 487 U.S. 131, 139 (1988) (reiterating prior holdings that state law immunity for conduct otherwise subject to § 1983 liability is preempted because it would otherwise "thwart the congressional remedy").

6

law or a reasonable extension thereof, and it was factually supported.[5]  Therefore, any sanction pursuant to this Court's inherent powers would be unsupportable.

      The Patels' pleading addressed the mandatory process they were due but deprived of by the collective and intentional actions taken by the Lakhanis, the Rabinowitz defendants, and the Lakhanis' counsel using the compulsory powers of the State of New Jersey.  As averred in greater detail in the Patels' Complaint, the Lakhanis orchestrated and manipulated a nearly $10 million judgment against the Patels (hereafter "the Judgment") by wrongfully causing an entity jointly owned by the Lakhanis and the Patels to default on a loan the Patels personally guaranteed (which loan was secured by collateral in the form of a hotel the Lakhanis and the Patels owned together), then obtaining from the bank at an extremely reduced (and artificial) sum the loan and the Judgment, and then causing the Lakhani-controlled hotel to convey to the Lakhanis a deed in lieu of foreclosure.  (Certification of Joseph R. Podraza, Jr. ("Podraza Cert."), Ex. A

---

[5] Indeed, for the Court's benefit, the Patels took the added precaution before filing the Complaint to have another reputable New Jersey-based law firm review its averments and comment on the legal sufficiency of the §1983 claim.  The New Jersey-based law firm concluded the averments in the Patels' pleading stated a viable §1983 claim.  (Certification of Joseph R. Podraza, Jr., ¶ 4.)

(Compl.) at ¶¶21-46.)[6]  In other words, the Lakhanis' cunning maneuvers left the Lakhanis with both sole ownership of the valuable collateral securing the loan (the hotel) and the Judgment for the full amount of the loan without offset or credit for the value of the collateral.  And the Lakhanis then set out, with the assistance of the Rabinowitz defendants, under color of state law to recover ***the Judgment in full from the Patels*** without the requisite fair market value credit for the hotel the Lakhanis received and despite the mandate in the operating agreement between the Patels and the Lakhanis that the Lakhanis be responsible for 51% of the Judgment.  (Podraza Cert., Ex. A at ¶20 & Ex. B (Operating Agreement for Brix Hospitality, LLC) at p.23 (Members agree to be responsible for amount in default under guarantees in same percentage of their respective ownership)).

New Jersey typically affords judgment debtors like the Patels constitutionally guaranteed due process by providing that the judgment resulting from a defaulted and secured loan first be reduced to a deficiency judgment before

---

[6] That the Lakhanis caused the default of the loan is memorialized in a September 15, 2010 email from Narendra Lakhani, on behalf of the Lakhanis as controlling partner, to the Patels stating: "[p]lease be advised that NorthStar [the jointly owned entity] or Patels are not to make any further payments to sun bank without first obtaining my approval."  (Podraza Cert., Ex. A (Compl.) at ¶ 25.)

execution efforts may proceed.[7] *See Valley Nat'l Bank v. Patyrak Realty, LLC*, NO. A-3892-14T4, 2016 N.J. Super. Unpub. LEXIS 2297, at *7 (N.J. Super. App. Div. Oct. 20, 2016) (to prevent windfall, the court holds a hearing to deduct from the debt the fair market value of collateral/property); *BMR Funding, LLC v. F II, LLC,* No. BER-F-637-12, 2013 N.J. Super. Unpub. LEXIS 2064, at *50 (N.J. Super. Ch. Div. Aug. 16, 2013) ("Our case law and general equitable principles recognize the entitlement of a mortgagor to a determination of what fair market value credit should be applied prior to allowing a mortgagee to further recover on the debt, or at least to a determination money remains due and owing.  Thus, logically, a foreclosure action should not need to proceed to the sheriff's sale if the debt has been satisfied.  Although unusual, and the court need not decide this today, plaintiff will not be permitted to obtain a judgment for foreclosure unless it is shown there is money due and owing."); *Citibank, NA v. Errico*, 597 A.2d 1091, 1097 (N.J. Super. App. Div.1991) (a deficiency hearing is required to preclude a

---

[7] In the traditional setting, when a lender forecloses on a mortgage, the total debt owed by the borrowers to the lender frequently exceeds the foreclosure sale price. The difference between the sale price and the total debt is called a deficiency. Once the foreclosure is completed, execution is only allowed on the deficiency.

windfall under general equitable principles).[8]  The amount of the subject deficiency judgment would equal the difference between the amount of the Judgment owed by the Patels under the defaulted guarantees (in this case no more than $4,900,000— $10 million less the Lakhanis' 51% portion) less the fair market value of the collateral (*i.e.*, the hotel).  In the event the fair market value of the collateral equals or exceeds the amount owed by the Patels on the defaulted guarantees, then no deficiency judgment would exist and execution against the Patels' assets would be prohibited.[9]  *See, e.g.*, *BMR Funding, LLC*, 2013 N.J. Super. Unpub. LEXIS 2064, at *50.  But the Lakhanis and the other defendants (especially the Rabinowitz defendants) invoked the powers of the State of New Jersey and bypassed the process which affords constitutional due process to the Patels.

---

[8] *See also Morsemere Fed. Sav. & Loan Ass'n. v. Nicolaou*, 503 A.2d 392, 396 (N.J. Super. App. Div. 1986) ("[W]e see no reason why a court of equity should not condition its award of relief to an applying creditor to prevent a possible double recovery or windfall, where the judgment creditor has purchased the property."); *United Jersey Bank/Central v. Pinhas*, A-440-93T2, 1995 N.J. Super. LEXIS 268, at *7-9 (N.J. Super. App. Div. Jan. 25, 1995) (unpublished) (noting that "[i]f the judgment had been entered against the borrowers for the full amount of their indebtedness, they would have been entitled to have that judgment treated as satisfied to the extent of the value which the bank received as the result of the foreclosure," and thus that "[t]he amount which the bank is now entitled to collect by execution may not exceed the difference between the total indebtedness and the value of what the bank has received from the foreclosure sale," which required finding the fair market value of the property); *Luparelli v. U.S. Fire Ins. Co.*, 188 A. 451, 452 (N.J.1936) ("The law abhors double satisfaction of an obligation.").

[9] The Patels' pleading contends that the value of the collateral/property (the hotel) exceeds the amount of the Judgment so that no deficiency exists to support execution on the Patels' assets.  (Podraza Cert., Ex. A (Compl.) at ¶¶36, 42.)

10

Despite repeated requests, the Patels were denied a fair market value hearing to ascertain if a deficiency judgment exists before the Rabinowitz defendants and the other defendants proceeded with execution on the Patels' assets.  (*See, e.g.*, Podraza Cert., Ex. A (Compl.) at ¶51.)   Instead, the Rabinowitz defendants and the other defendants intentionally abused the process due the Patels by improperly proceeding with execution against the Patels on the *full amount* of the Judgment that has not been reduced to a final sum certain since no fair market value hearing has been held to establish the amount of the required credit for the value of the hotel the Lakhanis received, and the Lakhanis' responsibility for 51% of the Judgment has not been credited against the Judgment amount.  *See Newstead Buildrs., Inc. v. First Merch. Nat'l Bank*, 369 A.2d 951, 952 (N.J. App. Div. 1977) (execution requires judgment that is final and for a sum certain); *see also BMR Funding, LLC*, 2013 N.J. Super. Unpub. LEXIS 2064, at *50 (fair market value credit should be applied prior to allowing mortgagee to further recover on the debt).  Inasmuch as the Judgment is not—and and cannot be—final for execution purposes unless and until it is reduced to a deficiency judgment, no execution on the Judgment can proceed consistent with constitutionally-required due process.

The Lakhanis, the Rabinowitz defendants, and the other defendant have deliberately availed themselves of and imposed on the Patels a state-sanctioned and constitutionally-defective process that does not allow for the holding of the fair

market value hearing to determine the fair market value credit that the state court and all parties have acknowledged the Patels are entitled to receive, or for a reduction based on the Lakhanis' 51% responsibility for the Judgment. (Podraza Cert., Ex. A (Compl.) at ¶¶55, 56.)  In this regard, the Patels have been deprived of their due process rights by the actions of the Rabinowitz defendants under the color of state law, as well as by the actions of the other defendants named in the Patels' withdrawn Complaint.

The facts and circumstances set forth in the Patels' Complaint give rise to an action against the Rabinowitz defendants and the other defendants under 42 U.S.C. §1983.  *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250 (3d Cir. 1994).  In *Jordan*, the Third Circuit considered proceedings for execution and the weakness of Pennsylvania's procedures for post-judgment relief.  *Id*. at 1266-71. The *Jordan* Court noted that, much like here, execution involved the invocation of state action by private persons acting under state law.  *Id*. at 1266.  Thus, private persons and their attorneys, like the Rabinowitz defendants and the other defendants, could be liable to a debtor, like the Patels, as state actors under §1983. *Id*.

The Third Circuit in *Jordan* concluded that "a private individual who enlists the compulsive powers of the state to seize property by executing on a judgment without pre-deprivation notice or hearing acts under color of law and so may be

held liable under section 1983 if his acts cause a state official to use the state's power of legal compulsion to deprive another of property."  20 F.3d at 1267. Because the process at issue in *Jordan* permitted execution without "providing any means for securing a pre-deprivation hearing or obtaining prompt post-seizure relief," the Third Circuit held that "the district court correctly concluded the acts of the [judgment creditors] and their Attorneys, absent pre-judgment waiver, deprived [the judgment debtor] of due process once they culminated in the sheriff's seizure of [judgment debtor's] bank account." *Id*. at 1271.

Here, the Rabinowitz defendants and the other defendants seized valuable and substantial property from the Patels.  (Podraza Cert., Ex. A (Compl.) at ¶¶66-68.)  Defendants' seizures were accomplished through an execution process designed by the defendants that became "the state's power of legal compulsion" once their process was approved by the state per the defendants' request. *Jordan*, 20 F.3d at 1267.  The Rabinowitz (and other) defendants' state-approved alternative process of execution was constitutionally infirm because, *inter alia*, the procedure circumvented the mandatory deficiency procedures required before execution could proceed under the normal New Jersey execution process that is in place to ensure judgment debtors receive due process.  Additionally, the Patels' pleading identifies other minimum due process requirements that were denied the Patels because the defendants unlawfully bypassed them through their state-

13

approved alternative execution process.  (*See* Podraza Cert, Ex. A (Compl.) at
¶¶55, 56.)

*Jordan*, or a reasonable extension of the principles announced therein,
provides ample precedent for the Patels' §1983 claim against the defendants.  This
matter was carefully considered and discussed with other learned New Jersey-
based counsel with expertise in execution matters who concurred a valid claim was
stated applying the law set forth in *Jordan*.  The Patels and their counsel therefore
did not act in bad faith, and sanctions under the Court's inherent powers would be
inappropriate.

### B.      The Rabinowitz Defendants Have No Absolute Immunity

Contrary to the representations in their sanctions motion, the Rabinowitz
defendants are not entitled to judicial or quasi-judicial absolute immunity as a
matter of law.  (Defs. Br. at pp. 14-24.)  While not mentioned in the Rabinowitz
defendants' papers, the United States Supreme Court has been "quite sparing" in
recognizing claims of absolute immunity in §1983 matters.  *Antoine v. Byers &
Anderson, Inc.,* 508 U.S. 429, 432 n.4 (1993) (quoting *Burns v. Reed*, 500 U.S.
478, 486-87 (1991)); *Forrester v. White*, 484 U.S. 219, 224 (1988).  As the
Supreme Court has explained:

> Aware of the salutary effects that the threat of liability
> can have, however, as well as the undeniable tension
> between official immunities and the ideal of the rule of
> law, this Court has been cautious in recognizing claims

14

that government officials should be free of the obligation
to answer for their acts in court.

*Forrester*, 484 U.S. at 223-24.  Furthermore, the Court presumes that "qualified
rather than absolute immunity is sufficient to protect government officials in the
exercise of their duties" and requires the proponent of the claim to "bear[] the
burden of establishing the justification for such immunity."  *Antoine*, 508 U.S. at
432.  Indeed, the Court stresses the potency of other defenses and immunities,
which merely require the official to comply with clearly established constitutional
law to avoid civil liability.  *Cleavinger v. Saxner*, 474 U.S. 193, 207 (1985).  In
addition, contrary to the Rabinowitz defendants' contention, even when a receiver
is appointed by the trial court and acts pursuant to a court order, these facts alone
do not conclusively establish the receiver's entitlement to derived judicial
immunity for all functions as receiver.  *See, e.g., Alpert v. Gerstner*, 232 S.W.3d
117, 131 (Tex. App. 2006).

Two requirements ***must*** be met for absolute immunity to attach:  (1) the
challenged conduct must be a "judicial act," and (2) the conduct must not have
been performed in the "clear absence of all jurisdiction."  *Stump v. Sparkman*, 435
U.S. 349, 356-57 (1978).  A "judicial act" is one that is a function normally
performed by a judge and within the expectations of the parties.  *Id*. at 362.  "Here,
as in other contexts, immunity is justified and defined by the functions it protects
and serves, not by the person to whom it attaches."  *Forrester*, 484 U.S. at 227; *see*

15

*also Ex parte Virginia,* 100 U.S. 339, 348 (1880) ("Whether the act done by him was judicial or not is to be determined by its character, and not by the character of the agent.").  The second requirement, complete absence of jurisdiction, requires more than simply acting in excess of jurisdiction.  *Stump*, 435 U.S. at 356-57. Judicial immunity may be extended to participants in the judicial system other than judges only when both requirements are met.  *See, e.g., Butz v. Economou*, 438 U.S. 478, 513-14 (1978) (federal administrative law judges were entitled to judicial immunity).

Rabinowitz, a state court-appointed receiver in aid of execution, does not perform judicial acts in the discharge of his duties.  Unlike traditional trustees and other court-appointed receivers, the *sui generis* receiver in aid of execution owes ***no*** duty to the Patels but, in fact, acts as the Patels' ***adversary*** as a debt collector appointed solely for the benefit of the private party creditor.  As the New Jersey courts have explained, this receiver's function is to ***provide aid to the creditor*** in its efforts "to discover property and apply it to the satisfaction of his execution."[10] *First Nat'l State Bank v. Kron*, 464 A.2d 1146, 1149 (N.J. Super. App. Div. 1983)

---

[10] The Rabinowitz defendants' papers fail to take into account the varying functions different types of receivers provide, arguing instead that <u>all</u> receivers enjoy judicial immunity performing <u>any</u> function.  Their "broad brush" judicial immunity analysis is precisely the type of analysis condemned under the precedent of the United States Supreme Court which mandates that a "functional" determination be made on a case by case basis.  *Forrester*, 484 U.S. at 225; *Ex parte Virginia,* 100 U.S. at 348.

16

(quoting *Fuller v. Taylor*, 6 N.J. Eq. 301, 302-303 (N.J. Ch. 1847)); *see also*

*Candee v. Egan*, 267 N.W.2d 890, 897 (Wis. 1978) ("receiver in aid of execution

acts not as administrator of the debtor's estate but as a collection agent for the

specific judgment creditors whose interests he represents"); *In re Oak Park*

*Calabasas Condo. Ass'n*, 302 B.R. 665, 670 (Bankr. C.D. Cal. 2003) (a receiver in

aid of execution serves as "an agent of the judgment creditor.").[11]   In other words,

a receiver in aid of execution like Rabinowitz acts as an extension of the private

party creditor, not of the court.

Unquestionably, the search for and execution on the property of a debtor to

collect on a judgment secured by a private party creditor in a concluded case are

not acts normally performed by a judge, nor are such acts within the expectations

of the parties.  Indeed, while ignored in the Rabinowitz defendants' sanctions

papers, Rabinowitz's function in this matter is closely analogous to "a sheriff

holding an execution, in determining upon what piece of property he will make a

levy," which the United States Supreme Court cited to exemplify the type of non-

judicial act not entitled to immunity.  *Ex parte Virginia,* 100 U.S. at 348.  This

---

[11] It is for these reasons that the Patels ***vigorously opposed*** Rabinowitz's
appointment, and the Rabinowitz defendants are plain wrong when they
misrepresent otherwise in their sanctions motion at page 4.  The chronology
surrounding Rabinowitz's appointment is memorialized in counsel's letter dated
June 13, 2017.  (Podraza Cert., Ex. C.)  Simply, as the debtors, it would be
nonsensical and entirely contrary to the Patels' interests for them to advocate for or
agree to the appointment of a receiver in aid of execution.

analogy is a close fit to the function of Rabinowitz because he too was charged with locating and selling the Patels' assets.  And Rabinowitz was charged with doing so on behalf of and as agent for a single private party creditor.  These are administrative, not judicial, functions and therefore do not enjoy judicial immunity.[12]  *Id*.  In any event, the Patels and their counsel plainly had more than a good faith basis to contend the Rabinowitz defendants were not cloaked with absolute immunity for the transgressions attributed to them in the subject pleading.

## C.     The *Barton* Doctrine Is Inapplicable

While the Supreme Court in *Barton v. Barbour*, 104 U.S. 126 (1881), declared it "a general rule that before suit is brought against a receiver[,] leave of the court by which [the receiver] was appointed must be obtained," the policy considerations underpinning the *Barton* doctrine make clear that it does not apply to a suit against a receiver in aid of execution as here.  The core purpose of the

---

[12] If treated as "public officials," the Rabinowitz defendants could raise a qualified immunity defense.  If ultimately deemed to be "private persons," the Rabinowitz defendants are not entitled to such a defense.  *See Jordan*, 20 F.3d at 1254 ("[T]he Supreme Court held in *Wyatt v. Cole*, 118 L.Ed. 2d 504, 112 S. Ct. 1827 (1992), that private persons acting under color of law were not entitled to qualified immunity.").  Instead, "good faith is a defense available to private persons who act under color of law."  *Id*. at 1276.  In any event, neither qualified immunity nor good faith defenses would be viable if, as the well-founded allegations in the Patels' pleading contend, the defendants (including the Rabinowitz defendants) acted with subjective appreciation that their acts deprived the Patels of their constitutional right to due process.  *See Jordan*, 20 F.3d at 1276; *see also* Podraza Cert., Ex. A (Compl.) at ¶¶ 47-50, 53, 55-56, 61, 64, 65.

*Barton* doctrine is to prevent interference with the appointing court's control over

receivership property:

> The evident purpose of a suitor who brings his action
> against a receiver without leave is to obtain some
> advantage over the other claimants upon the assets in the
> receiver's hands. . . . A suit therefore, brought without
> leave to recover judgment against a receiver for a money
> demand, is virtually a suit the purpose of which is, and
> effect of which may be, to take the property of the trust
> from his hands and apply it to the payment of the
> plaintiff's claim, without regard to the rights of other
> creditors or the orders of the court which is administering
> the trust property.

*Barton*, 104 U.S. at 128-29.

In such cases, requiring a party with claims against the receiver to obtain

permission from the appointing court before filing suit in another jurisdiction

prevents the "usurpation of the powers and duties which belonged exclusively to

[the appointing] court" and preserves the "duty of that court to distribute the trust

assets to creditors equitably and according to their respective priorities." *Id.* at

136. Not surprisingly, each of the cases the Rabinowitz defendants cite in support

of the application of the *Barton* doctrine, including *Barton*, involve attempted

actions against a trustee or receiver in equity appointed to aid in the administration

of the assets of a company or individual subject to bankruptcy and claims of

multiple creditors. *See In re VistaCare Grp., LLC*, 678 F.3d 218 (3d Cir. 2012);

*Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314 (6th Cir. 2006); *Lin v.*

*Neuner (In re Lin)*, 2015 U.S. Dist. LEXIS 52457 (D.N.J. Apr. 15, 2015); *In re*

*DGI Servs., LLC*, 2017 Bankr. LEXIS 1789 (Bankr. D.N.J. June 26, 2017).

By contrast, where a receiver in aid of execution has acted wrongfully and

the plaintiff's claim seeks recovery against the receiver personally and not against

the receivership property, the rationale for the *Barton* doctrine is wholly

inapplicable.  The instant suit would not obstruct the equitable distribution of

property or infringe upon the rights of other claimants or creditors since the Patels

did not seek redress from receivership property and the receivership was

established for the sole purpose of aiding a single creditor—the Lakhanis.

Therefore, the concern that underlies *Barton* is not present here.  Furthermore,

because Rabinowitz acts as a collection agent on behalf of the sole creditor, and

not as an arm of the appointing court assisting in the administration of a debtor's

estate, the Patels' civil rights suit would not infringe upon the appointing state

court's powers over a debtor's estate.  Accordingly, the *Barton* doctrine simply

lacks application to the Patels' civil rights claims and, thus, the Patels were not

required to seek permission from the Superior Court of New Jersey before bringing

their § 1983 claim.

Even assuming *arguendo* that the *Barton* doctrine applies to suits against

receivers in aid of execution, the *ultra vires* exception bars application to the

instant case.  The *Barton* Court made clear that "if, by mistake or wrongfully, the

receiver takes possession of property belonging to another, such person may bring suit therefor against him personally as a matter of right; for in such case the receiver would be acting ultra vires." *Barton*, 104 U.S. at 134; *see also Teton Millwork Sales v. Schlossberg*, 311 Fed. Appx. 145, 148 (10th Cir. 2009).

The instant case falls squarely within the *ultra vires* exception to the *Barton* doctrine, as the Patels alleged that the Rabinowitz defendants unlawfully seized their assets by intentionally abusing the process due the Patels in proceeding with execution on the full amount of the Judgment prior to a fair market value hearing to determine the requisite credit for the value of the collateral the Lakhanis obtained and before crediting the Lakhanis' 51% responsibility for the Judgment. The Patels' Complaint alleged that the Rabinowitz defendants were fully aware that their alternate process of execution violated the Constitution because it bypassed the deficiency procedures required before execution could proceed under traditional New Jersey execution process designed to ensure due process to judgment debtors. The Superior Court's appointing orders establishing Rabinowitz's broad powers in the underlying case do not overcome the Patels' allegations of facts in their civil rights Complaint demonstrating that the Rabinowitz defendants acted wrongfully in seizing the Patels' assets. *Teton Millwork Sales*, 311 Fed. Appx. at 148. In short, because the Patels' civil rights Complaint contained sufficient allegations of Rabinowitz's *ultra vires* conduct, the

21

*Barton* doctrine does not apply and the Patels could properly bring suit against the Rabinowitz defendants in this Court.

## II.   WITHDRAWAL OF THE PLEADING WITHOUT PREJUDICE WAS PROPER AND CANNOT SUPPORT SANCTIONS

The Rabinowitz defendants additionally appear to contend, without support, that the Patels were obligated to dismiss their pleading with prejudice.  According to these defendants, a passage in a letter written on behalf of the Patels advising that "under appropriate circumstances, we are considering filing a new complaint asserting and amplifying our clients' federal civil rights claims," mandates imposing sanctions against the Patels and/or their counsel.  The Rabinowitz defendants contend that this passage in the letter is "a direct threat of further litigation" which needs to be deterred because, according to them, the Patels can never state a viable § 1983 claim against them no matter what they do.  The Rabinowitz defendants are wrong.

First, the Rabinowitz defendants cite no legal authority to support the issuance of sanctions pursuant to the Court's inherent power for sending a letter, outside of court, preserving the Patels' rights after the lawsuit was voluntarily dismissed.  The Patels' counsel's letter does nothing more than reserve the Patels' rights to "fil[e] a new complaint asserting and amplifying our client's federal civil rights claims."  (Limbach Cert. in support of Rabinowitz Defs.' Mot., Ex. R.)  As

the courts are vested with inherent power to issue sanctions in order to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases," this power does not extend to a communication among counsel occurring outside the judicial process. *Chambers*, 501 U.S. at 43 (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)). No vindication of judicial authority is required since no judicial resources were touched upon by the Patels' counsel's letter. The Rabinowitz defendants improperly seek the issuance of sanctions as intimidation to prevent the Patels from exercising their rights to refile their claim within the statute of limitations.

Second, as discussed above, genuine disputes exist over (1) the Rabinowitz defendants' § 1983 liability under *Jordan* and a reasonable extension of the legal principles stated therein; (2) their "entitlement" to absolute judicial immunity given the function of the receiver in aid of execution here; and (3) the application of *Barton* under the unique circumstances presented here. Under these circumstances, the filing of the Patels' pleading was proper, made in good faith, not frivolous, and not sanctionable.

Third, no rule of federal civil procedure requires that the voluntary withdrawal of the Patels' pleading be with prejudice. In fact, the Rabinowitz defendants' sanctions papers do not cite any authority requiring a party to dismiss the subject filing with prejudice to avoid Rule 11 or any other sanctions. Instead,

23

Rule 11 allows the Patels to withdraw their pleading without prejudice so they may later choose to resurrect their federal lawsuit with the same or additional averments and claims.[13]  *See, e.g., Stauffer v. D.R. Horton, Inc.*, CIV. NO. 08-3459, 2008 U.S. Dist. LEXIS 101052, at *7 (E.D. Pa. Dec. 10, 2008) (holding that Rule 11 "sanctions are not available" against a plaintiff who voluntarily dismisses his complaint without prejudice within the "safe harbor" period).  For example, the Patels have become aware of facts suggesting that the Rabinowitz defendants, acting under color of state law, seized the Patels' mail under false pretenses and through misrepresentations to the United States Postal Service.  If the Patels choose to exercise their rights to restore their lawsuit, the Rabinowitz defendants' actions with respect to the Patels' mail may further bolster the Patels' claims. Simply, the Patels cannot be deprived of their right to file a lawsuit against the defendants to vindicate the Patels' constitutional rights.

Finally, and as importantly, it would have been professionally irresponsible for the Patels' attorneys to counsel their clients to withdraw their complaint with prejudice.  The statute of limitations on the Patels' §1983 claim has not passed, and the Patels' present inability to prosecute their constitutional claims due to financial

---

[13] Of course, if the Patels do so, they will not be permitted to again withdraw their complaint without prejudice or receive safe-harbor protection from a Rule 11 sanctions motion, as Federal Rule 41(a)(1)(B) provides that "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits."

constraints does not foreclose them from securing the services of other counsel to refile and pursue similar claims on the Patels' behalf.

## <u>CONCLUSION</u>

The Patels were and continue to be hounded by execution activities by the Rabinowitz defendants and others acting under color of state law that run afoul of minimum due process requirements.  These unconstitutional activities more than warranted the Patels' filing of a §1983 claim against the defendants, including the Rabinowitz defendants.  The Patels timely withdrew the pleading and did so without prejudice in accordance with the governing rule of procedure.  They properly reserved the right to consider filing a new complaint asserting and amplifying their claims.  All of this conduct is well within the parameters of acceptable behavior and not subject to sanctions.  Moreover, the award of sanctions, as the Rabinowitz defendants urge, for the *in terrorem* purpose of foreclosing a party's future access to the courts to redress constitutional wrongs by the Rabinowitz defendants and others would be improper.  Therefore, the motion for sanctions by the Rabinowitz defendants should be denied.

Respectfully submitted,

**SPRAGUE & SPRAGUE**

Dated:  November 6, 2017

By: /s/Joseph R. Podraza, Jr.
JOSEPH R. PODRAZA, JR., ESQ.
PETER A. GREINER, ESQ.
The Wellington Building, Suite 400
135 South 19th Street
Philadelphia, PA 19103
(215) 561-7681
*Counsel for Plaintiffs Anil Patel and Manish Patel*